**UNITED STATES, Appellant and Cross–Appellee,**

v.

**Domingo AVILA, Sergeant, U.S. Air Force, Appellee and Cross–Appellant.**

No. 57,512.
ACM 25577.

U.S. Court of Military Appeals.

Sept. 29, 1988.

For Appellant: *Major Deborah A. Baker* (argued); *Colonel Leo L. Sergi* (on briefs).

For Appellee: *Lieutenant Colonel Morris A. Tanner, Jr.* (argued); *Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Kathryn I. Taylor* (on briefs).

*Amicus Curiae: Carol B. Anderson, Esq.*, for Clinical Program, Wake Forest University School of Law.

*Opinion of the Court*

COX, Judge:

The accused was tried by a general court-martial convened by the Commander, Twenty–Second Air Force (MAC), Travis Air Force Base, California. Court hearings were held on May 6–9, 1986, at McChord Air Force Base, Washington. Contrary to his pleas, the accused was convicted of committing sodomy with a female under the age of 16, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925.[1]

On March 3, 1987, the Court of Military Review, sitting *en banc*, set aside the findings and sentence, and dismissed the charges. The majority of that court concluded that the court-martial lacked "subject matter jurisdiction over the alleged offenses and that the military judge erred in denying ... [the accused's] motion to dismiss." 24 M.J. 501, 503.

Pursuant to Article 67(b)(2), UCMJ, 10 USC § 867(b)(2), the Acting Judge Advocate General of the Air Force certified the following issue for our review:

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW IN DETERMINING THAT THE ACCUSED'S SODOMY WITH HIS DEPENDENT STEP–DAUGHTER IN THEIR OFF–BASE QUARTERS LACKED SIGNIFICANT IMPACT ON THE MILITARY AND WAS THEREFORE NOT SERVICE–CONNECTED.

In addition, we granted the cross-petition which asked that we determine:

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING DR. MAY-ERS' HEARSAY TESTIMONY ABOUT THE ALLEGED VICTIM'S STATE-MENTS AS STATEMENTS FOR MEDI-CAL DIAGNOSIS OR TREATMENT UNDER M.R.E. 803(4).

Finally, we specified a third issue for review, as follows:

WHETHER *SOLORIO v. UNITED STATES,* [483 U.S. 435,] 107 S.CT. 2924 [97 L.Ed.2d 364] (1987), SHOULD BE APPLIED RETROACTIVELY IN THIS CASE.

In view of our resolution of the specified issue, it is unnecessary for us to answer the certified issue. We conclude that the court-martial properly exercised jurisdiction over the accused by virtue of his military status. Further, we answer the granted issue in the affirmative and leave it to the Court of Military Review to determine whether the accused was prejudiced by admission of the hearsay evidence.[2]

This trial occurred after this Court rendered its decision in *United States v. Solorio,* 21 M.J. 251 (C.M.A.1986), that the court-martial did, indeed, have subject-matter jurisdiction over a number of off-base sex offenses against children. Our decision that service-connection did exist

was based on various factors, including the continuing effect on the victims and their families and ultimately on the morale of any military unit or organization to which the family member is assigned.

*Id.* at 256. Unlike the instant case, Solorio's victims were all military dependents of other service personnel. Service-connection was a jurisdictional predicate established by *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), as clarified by *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

In light of this Court's opinion in *Solorio,* the military judge below ruled that the offense was service-connected. The Court of Military Review disagreed.[3]

---

1. The accused was sentenced to a dishonorable discharge, confinement for 10 years, partial forfeitures, and reduction to E–1. The convening authority reduced the confinement and partial forfeitures to 7 years, but otherwise approved the sentence.

2. We commend government and defense appellate counsel and *amicus curiae,* the Wake Forest University School of Law Clinical Program, for their fine briefs and oral presentations.

3. For purposes of this appeal, we will assume, without deciding, the correctness of the Court of Military Review's conclusion that the service-

On June 25, 1987—almost 4 months after the Court of Military Review rendered its opinion—the United States Supreme Court overruled *O'Callahan v. Parker, supra,* and "abandoned" the requirement of service-connection. *Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 2927, 97 L.Ed.2d 364 (1987). As before O'Callahan, court-martial jurisdiction now depends only on whether "a court-martial is convened to try a serviceman who was a member of the armed services at the time of the offense charged." 107 S.Ct. at 2933 (footnote omitted).

For offenses occurring after June 25, 1987, it is clear that military status alone is the operative test. The question we now decide is whether this same test applies to offenses committed before that date. We hold that it does.

Obviously, conduct that was legal at the time it occurred could not be made criminal retroactively, either by the legislature or the courts. As the Supreme Court has stated:

> The *Ex Post Facto* Clause is a limitation upon the powers of the Legislature, see *Calder v. Bull,* 3 Dall. 386 [1 L.Ed. 648] (1798), and does not of its own force apply to the Judicial Branch of government. *Frank v. Mangum,* 237 U.S. 309, 344 [35 S.Ct. 582, 594, 59 L.Ed. 969] (1915). But the principle on which the Clause is based—the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties—is fundamental to our concept of constitutional liberty. See *United States v. Harriss,* 347 U.S. 612, 617 [74 S.Ct. 808, 81, 98 L.Ed. 989] (1954); *Lanzetta v. New Jersey,* 306 U.S. 451, 453 [59 S.Ct. 618, 619, 83 L.Ed. 888] (1939). As such, that right is protected against judicial action by the Due Process Clause of the Fifth Amendment.

*Marks v. United States,* 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977). *Cf. Bouie v. City of Columbia,* 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964), which states:

> If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

There is no question here, however, of conduct being made criminal that was lawful at the time of occurrence. Committing sodomy on a minor was a crime under the laws of the State of Washington (styled as statutory rape in the first degree), Wash. Rev.Code Ann. § 9A.44.070, as defined in § 9A.44.010, as well as under the Uniform Code of Military Justice. Thus, the accused had ample warning that his conduct was criminal; he can claim "no legitimate reliance interest." *See United States v. Ross,* 456 U.S. 798, 824 and n. 33, 102 S.Ct. 2157, 2172–73 and n. 33, 72 L.Ed.2d 572 (1982).

Until recently, retroactivity questions have been resolved largely under one of two approaches. Under the first approach, the following were deemed to be *ex post facto* laws:

> 1st. Every law that makes an action done before the passing of the law; and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

connection factors present in this case were "tenuous." 24 M.J. 501–02. In previous, post-*United States v. Solorio,* 21 M.J. 251 (C.M.A. 1986), cases, we have not had to decide the retroactivity question because the offenses were clearly service-connected. *United States v. Dale,*

25 M.J. 205 (C.M.A.1987) (summary disposition); *United States v. Huitt,* 25 M.J. 136, 137–38 (C.M.A.1987); *United States v. Overton,* 24 M.J. 309, 312 (C.M.A.), *cert. denied,* — U.S. —, 108 S.Ct. 487, 98 L.Ed.2d 285 (1987).

*Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).

Hence, in Dobbert v. Florida, 432 U.S. 282, 292–301, 97 S.Ct. 2290, 2297–2302, 53 L.Ed.2d 344 (1977), the defendant committed capital offenses when the death penalty statute in effect did not pass constitutional muster. By the time of trial, however, the statute had been successfully revamped. The Supreme Court held that the defendant's sentence to death under the new statute was permissible because the change was "procedural, and on the whole ameliorative." *Id.* at 292 (footnote omitted). *See generally* W. LaFave and A. Scott, Substantive Criminal Law § 2.4(a)-(c) (1986). *Cf. United States v. Matthews,* 16 M.J. 354, 381 (C.M.A.1983); *United States v. McDonagh,* 14 M.J. 415 (C.M.A.1983).

The other broad approach, pertaining to "constitutional rules of criminal procedure," was based on an *ad hoc* assessment of these factors:

(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

*Stovall v. Denno,* 388 U.S. 293, 296, 297, 87 S.Ct. 1967, 1969, 1970, 18 L.Ed.2d 1199 (1967). If "the very integrity of the fact-finding process" was at stake, *Linkletter v. Walker,* 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965); or "the clear danger of convicting the innocent" was present, *Tehan v. Shott,* 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453 (1966), the new rule was applied retroactively. *See also Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Absent such dire consequences, changes were usually applied prospectively on the theory that criminals shouldn't receive a windfall if the police were following the rules in effect at the time of their actions.

Later on, however, nonretroactivity was limited to rulings which constituted "a clear break with" past precedent. *Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985); *United States v. Johnson,* 457 U.S. 537, 553–54, 102 S.Ct. 2579, 2589, 73 L.Ed.2d 202 (1982). *See also Yates v. Aiken,* 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988).

Recently, in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court threw out even the "clear break" exception. Now "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." 107 S.Ct. at 716. Of course, this holding does not affect *ex post facto* situations.

■ Under the *Griffith* approach, it appears that we have no option but to apply the Supreme Court's holding in *Solorio* retroactively to this case.[4] In another sense, however, it is not a question of retroactivity at all. Court-martial jurisdiction is established by Articles 2 and 17, UCMJ, 10 USC §§ 802 and 817, respectively. *Solorio v. United States, supra* at 2926. In pertinent part, these provisions remain substantially unchanged from their inception. By statute, court-martial jurisdiction has always extended to all members of regular components of the armed forces. In *Solorio,* the Supreme Court concluded that *O'Callahan v. Parker* and *Relford v. Commandant,* both *supra,* were wrongly

---

4. In *United States v. Carter,* 25 M.J. 471 (C.M.A. 1988), both Chief Judge Everett and I discussed overruling *United States v. Holley,* 17 M.J. 361 (C.M.A.1984), prospectively. As an alternate holding, the Chief Judge seems to have concluded that the judge's error was harmless under the circumstances:

In light of the painstaking manner in which the selection process was conducted, the extensive *voir dire* that was conducted, and the judge's liberality in granting challenges for cause, no need exists to reverse appellant's conviction, even though he was not granted the requested additional peremptory challenges.

25 M.J. at 477 (footnote omitted). I, on the other hand, concluded that the judge had not erred. *Id.* at 478. Thus, it appears that no relief was due Carter, whether our views on peremptory challenges were applied prospectively or retroactively.

decided. The court-martial had jurisdiction over Solorio by virtue of a lawful act of Congress. The Supreme Court did not create jurisdiction where none existed before; it simply recognized the pre-existing jurisdiction. Avila was subject to court-martial jurisdiction for the same reason that Solorio was.

■ Turning to the evidentiary issue, Mil.R.Evid. 803(4), Manual for Courts-Martial, United States, 1984, provides an exception to the rule against hearsay in the case of statements made *"for purposes of medical diagnosis or treatment."* It is said that "[t]he basis for the exception is the presumption that an individual seeking relief from a medical problem has incentive to make accurate statements." Drafters' Analysis, Manual, *supra* at A22–48. In this case, it appears that the 4–year-old victim, who was in foster care at the time, did not realize that she was being treated or diagnosed, or even that the psychologist was "in the business." Dr. Mayers introduced herself to the victim as "Kathy" and presented herself as "just another Mommy." She also took care not to appear to be associated with the social worker or trial counsel—people that her mother had warned her not to talk to because they were bad and were trying to take away her daddy.

Obviously, very young children will not have the same understanding or incentive as adults when making statements to persons providing health care. Nevertheless, unless it appears that the child knows at least that the person is rendering care and needs the information in order to help, the rationale for the exception disappears entirely. *See Cassidy v. State*, 74 Md.App. 1, 536 A.2d 666, 684 (Md.App.1988); Graham, *Indicia of Reliability and Face to Face Confrontation: Emerging Issues in Child Sexual Abuse Prosecutions*, 40 U.Miami L.Rev. 19 (1985); J. Myers, *Child Witness Law and Practice* 358 (1987). Without such a showing—however reliable the statements might appear to be—some basis other than the *"Statements for purposes of medical diagnosis or treatment"* must be found if they are to be admitted.

In this case, the statements were admitted solely under Mil.R.Evid. 803(4). It is too late, therefore, to consider whether some other basis for admitting the statements might have been found. *United States v. Watkins*, 21 M.J. 224, 226 n. 2 (C.M.A.), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986). However, our conclusion that the victim's statements to the psychologist did not qualify under that rule does not necessarily invalidate the conviction; rather, the error must be tested for prejudice. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

The decision of the United States Air Force Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for further review.

Chief Judge EVERETT concurs.

SULLIVAN, Judge (concurring in the result):

I believe this case can be resolved on the basis of the decision of this Court in *United States v. Abell*, 23 M.J. 99 (C.M.A.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).