UNITED STATES

v.

Gary M. KELLEY, 049–58–1698,
Electrician's Mate First Class
(E–6), U.S. Navy.

NMCM 93 01208.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 4 Feb. 1993.

Decided 12 Dec. 1994.

Maj Hagen W. Frank, USMC, Appellate Defense Counsel.

LT R.W. Sardegna, JAGC, USNR, Appellate Government Counsel.

Before ORR and REED, Senior Judges, and T.D. KEATING, J.

ORR, Senior Judge:

The primary issues in this case concern the Government's use of three out-of-court statements by the alleged victim to prove acts of child sexual abuse. The first was to the child's babysitter, which was admitted under the residual exception to the hearsay rule; the second was to a family counselor, which was admitted under the medical diagnosis and treatment exception; and, the third was to a school nurse, which was ostensibly admitted under the medical diagnosis and treatment exception.

The victim was the appellant's 6 year-old daughter [CK], who was 7 at the time of trial. The offenses came to light when CK mentioned to two other children who lived in her neighborhood, one of them an older boy [AK], that she took showers with her daddy, and again the following day, when she spoke to AK while he was babysitting for her and seven or eight other children at a church nursery. At the nursery, CK appeared to be upset when she approached AK and whispered in his ear that "me and my daddy have sex" and pointed to her genital area, which she referred to as her "privates." When AK told her she shouldn't talk like that, CK persisted and told him that her daddy "makes white stuff come out on her" and "puts his privates in her privates."

AK reported the incident to his mother, Mrs. Fowler, later that evening, and she brought the girl to the nurse at the elementary school where her own children and CK were enrolled. When Mrs. Fowler told the nurse that CK had something to tell her, CK

said: "My daddy does nasty things to me." The school nurse then notified the state department of children services and the school board.

About 6 weeks later, CK was referred by state children's services authorities to a state licensed child counselor, Rodney Mills. Mr. Mills saw CK on a regular basis thereafter, about an hour a week for the next 8 months until the date of trial, for treatment in connection with the allegations of sexual abuse. Twelve times during the course of these sessions, CK disclosed a variety of sexual activity between her and her father.

These disclosures led to the five offenses charged at this court-martial: rape, anal sodomy, indecent liberties, and two indecent acts. Contrary to his pleas, the appellant was convicted of indecent acts by touching CK's vagina and crotch with his penis as a lesser included offense of the rape allegation, of indecent acts by touching CK's buttocks and anus with his penis as a lesser included offense of the sodomy charge, indecent acts by fondling CK's vagina with his hands, and indecent liberties with CK by causing her to fondle his penis, all in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The appellant was acquitted of one allegation of indecent acts.

The military judge, sitting alone, sentenced the appellant to confinement for 10 years, forfeiture of $818.00 pay per month for 60 months, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged. Before us, the appellant, through his appellate defense counsel, has raised the first five of eight assignments of error and, directly himself, the remaining three.[1]

1. I. THE MILITARY JUDGE ABUSED HIS DISCRETION BY ADMITTING UNDER THE MEDICAL TREATMENT HEARSAY EXCEPTION THE TESTIMONY OF A FAMILY COUNSELLOR CONCERNING THE PUTATIVE VICTIM'S OUT–OF–COURT STATEMENTS WHERE THE RECORD ESTABLISHES THAT, WHILE SHE UNDERSTOOD THAT THE VISITS TO THE COUNSELLOR WERE RELATED TO HER ACCUSATIONS AGAINST APPELLANT, IT FAILS TO ESTABLISH THAT SHE MADE THE STATEMENTS IN EXPECTATION OF RECEIVING HELP FROM A MEDICAL PROFESSIONAL FOR ANY PARTICULAR SYMPTOM OR AILMENT.

II. THE MILITARY JUDGE ABUSED HIS DISCRETION BY ADMITTING UNDER THE MEDICAL TREATMENT HEARSAY EXCEPTION THE TESTIMONY OF A SCHOOL NURSE CONCERNING THE PUTATIVE VICTIM'S OUT–OF–COURT STATEMENT WHERE THE RECORD ESTABLISHES AT MOST THAT SHE HOPED MAKING THE STATEMENT WOULD RESULT IN A CESSATION OF THE ALLEGED MOLESTATION.

III. THE MILITARY JUDGE ABUSED HIS DISCRETION BY ADMITTING UNDER THE RESIDUAL HEARSAY EXCEPTION THE TESTIMONY OF A BABY–SITTER CONCERNING THE PUTATIVE VICTIM'S OUT–OF–COURT STATEMENTS WHERE THOSE STATEMENTS WERE NOT MORE PROBATIVE THAN ANY OTHER EVIDENCE ON THE POINT FOR WHICH OFFERED AND WHERE THE STATEMENTS LACKED SUFFICIENT CIRCUMSTANTIAL GUARANTEES OF TRUSTWORTHINESS.

IV. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS TRIAL DEFENSE COUNSEL OFFERED THE PUTATIVE VICTIM'S PRIOR JUDICIAL RECANTATION FOR IMPEACHMENT PURPOSES ONLY, AND FAILED TO OFFER IT AS A PRIOR INCONSISTENT STATEMENT FOR SUBSTANTIVE CONSIDERATION ON THE MERITS.

V. A SENTENCE WHICH INCLUDES CONFINEMENT FOR TEN YEARS IS INAPPROPRIATELY SEVERE WHERE NONE OF THE OFFENSES OF WHICH APPELLANT STANDS CONVICTED INVOLVED PENETRATION OR OTHER PHYSICAL HARM TO THE VICTIM.

VI. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS TRIAL DEFENSE COUNSEL FAILED TO OBJECT TO THE ADMISSIBILITY OF THE TESTIMONY OF THE PUTATIVE VICTIM WHERE [sic] TESTIMONY WAS AFFECTED [sic] DURING THERAPY WITH A FAMILY COUNSELLOR WHO ADMITTED TO PRECONCEIVED PERSONAL BIAS.

VII. THE NIS INVESTIGATION OF THE ALLEGATIONS OF ABUSE WAS FAULTED [sic] WHERE INVESTIGATORS WERE BIASED TOWARD PROSECUTIVE INTEREST OF THE CASE [sic], UNWILLING TO ACKNOWLEDGE THE POSSIBILITY OF A FALSE ACCUSATION, ADVERSELY AFFECTING THE OUTCOME OF THE INVESTIGATION AND SUBSEQUENT TRIAL. TRIAL DEFENSE COUNSEL DOES NOT HAVE INDEPENDENT INVESTIGATORS, SO ALL 'EVIDENCE' OBTAINED BY NIS SHOULD BE EQUALLY AVAILABLE TO DEFENSE COUNSEL ON THE MERITS.

VIII. THE MILITARY JUDGE ABUSED HIS DISCRETION WHERE HE RULED AGAINST TRIAL DEFENSE CROSS–EXAMINATION OF NIS AGENT [sic] TO ESTABLISH THE RELIABILITY OF THE NIS AGENT'S TESTIMONY AND HER CASE REPORT.

The prosecution's evidence consisted of the testimony of six witnesses, including CK, and several items of real evidence which were introduced through the testimony of the Government's first witness, an agent of the Naval Investigative Service [NIS]. The agent's testimony was essentially limited to describing the results of a command-authorized search of the appellant's quarters. The remaining four witnesses included Mr. Mills, the school nurse, AK, and Mrs. Fowler. Mrs. Fowler's testimony is essentially limited to describing how it was that she took CK to see the school nurse and what she did or did not say to CK about the purpose of that visit. We shall address the testimony of Mr. Mills, the nurse, and AK in the sequence used in the appellant's assignments of error.

## I.

Even though CK was available as a witness, Mr. Mills was permitted to recount CK's statements to him under Mil.R.Evid. 803(4), which allows the use of "[s]tatements made for purposes of medical diagnosis or treatment and described medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The questions presented in the appellant's first assignment of error is whether CK understood the purposes of her meetings with Mr. Mills and whether that understanding was sufficiently expressed to support the military judge's decision to admit Mr. Mills' testimony under this exception. *See United States v. Clark*, 35 M.J. 98, 105 (C.M.A.1992) (citing *United States v. White*, 25 M.J. 50 (C.M.A.1987)); *United States v. Dean*, 31 M.J. 196, 203 (C.M.A.1990), *cert. denied*, 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 215 (1991).

The U.S. Court of Military Appeals recently addressed these same questions by noting that:

[s]tatements offered under Mil.R.Evid. 803(4) must satisfy a two-pronged test:

"first the statements must be made for the purposes of 'medical diagnosis or treatment'; and second, the patient must make the statement 'with some expectation of receiving medical benefit for the medical diagnosis or treatment that is being sought.' "

*United States v. Faciane*, 40 M.J. 399, 403 (C.M.A.1994) (quoting *United States v. Edens*, 31 M.J. 267, 269 (C.M.A.1990)). The Court also stated:

A key factor in determining whether the second prong is met is "the state of mind or motive of the patient in giving the information ... and the expectation or perception of the patient that if he or she gives truthful information, it will help him or her to be healed."

*Id.* (quoting *Clark*, 35 M.J. at 105).

■ Although CK was never asked during her testimony about her meetings with Mr. Mills, he stated that he was introduced to CK as "a talking doctor" [2] with whom "she could talk about whatever she wanted" and he believed she understood that explanation. Record at 44. That impression was reenforced by Mr. Mills' subsequent testimony that CK later asked him "to help her with taking out anger on others." Record at 47. Given that the patient was a 6 year-old child and unlikely to have much intellectual appreciation of the role of mental health professionals, we find CK's articulation of a desire for Mr. Mills to help her with an emotional problem to be convincing evidence of her understanding that she was seeing Mr. Mills as part of some treatment that was supposed to benefit her. Consequently, she would have had the necessary motivation to speak truthfully that supports this exception to the hearsay rule. *See Clark; Edens; Dean; White; cf. United States v. Avila*, 27 M.J. 62, 66 (C.M.A.1988) (holding that child's statements to a psychologist who was introduced to the child only as "Kathy" and as "just another Mommy" were not admissible under medical diagnosis and treatment exception).

**2.** Mr. Mills was not a doctor, however, and he explained that in his testimony about his credentials. The scope of the medical treatment exception is not limited to licensed medical doctors, but may include statements made to psychologists, social workers, and other health care professionals. *United States v. Welch*, 25 M.J. 23, 25 (C.M.A.1987).

Even though Mr. Mills also testified that he did not tell CK what the purpose of her visits actually was (that she was being treated for sexual abuse), he refrained from doing so because he did not want to appear to be leading CK into any particular area of conversation. Record at 48. He also believed that, from CK's series of interviews and examinations preceding his initial interview with her and from the fact that she first told him she didn't want to talk about any bad things that had happened to her, she understood why she was there to see him. *Id.*

■ Although the Court of Military Appeals has suggested that there may be some "relaxation" of the quantum of proof when a child seeks medical treatment, the facts and circumstances must still support a determination that (1) the offered statement was made for the purposes of medical diagnosis or treatment and (2) the child must make the offered statement with some expectation of receiving medical benefit from the medical diagnosis or treatment that is being sought. *Faciane,* 40 M.J. at 403; *United States v. Williamson,* 26 M.J. 115, 118 (C.M.A.1988) (citing *United States v. Deland,* 22 M.J. 70 (C.M.A.), *cert. denied,* 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986)); *United States v. White; United States v. Welch,* 25 M.J. 23 (C.M.A.1987). We find sufficient facts and circumstances in the record to support the military judge's determination, and we conclude that the judge did not err in admitting Mr. Mills' testimony under this exception to the hearsay rule.[3]

## II.

■ The nurse's testimony involved two separate conversations she had with CK. As we have indicated, above, the initial disclosure was when CK was first brought to the nurse and CK told her that the appellant did "nasty things" to her. There was a second conversation later that same day between the nurse and CK in the principal's office which the military judge declined to admit. Record at 159–160. The Government maintains that the military judge disregarded CK's initial comment to the nurse and that the appellant's assertion of error is, therefore, moot. The military judge initially ruled that CK's first comment to the school nurse was admissible under Mil.R.Evid. 803(4). Record at 129–130. The school nurse then described the second conversation, and following that testimony, the military judge stated he was disregarding the nurse's testimony. When the assistant trial counsel asked if the judge meant only the nurse's testimony as to the second conversation, the judge responded: "Well there is nothing of material fact in the original disclosure. The only thing that the witness talked about was dad touched me in nasty ways. What I'm really concerned about was the objection that ... [was] made when she testified as to ... [the second conversation]." Record at 160.

We agree with the military judge's conclusion that CK's first comment to the school nurse had little, if any, probative value. The remark was so general as to be meaningless, and in light of CK's actual testimony in which she repeated the comment that the appellant did "nasty stuff" and recounted specific acts of sexual abuse, we find any possible error in the admission of the school nurse's testimony, if the military judge considered it at all, to be harmless. *See United States v. Weeks,* 20 M.J. 22, 25 (1985).

## III.

The testimony of AK, the babysitter, was admitted under the residual exception to the hearsay rule, which allows the admission of:

[a] statement not specifically covered by any of the ... [other] exceptions [under this rule] but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material

---

3. The Government has suggested that an alternative basis for the admission of Mr. Mills' testimony concerning CK's statements would be the residual exception to the hearsay rule in Mil. R.Evid. 803(24). Since we find no error in the military judge's decision to admit the statements under Mil.R.Evid. 803(4), we need not address the Government's alternate theory. We note, however, that the Court of Military Appeals has indicated that it is too late to assert an alternate basis for admissibility during appellate review when the evidence was not offered at trial on such a theory. *See Avila,* 27 M.J. at 66.

fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence....

Mil.R.Evid. 803(24). The appellant asserts several different grounds for his claim that AK's testimony, recounting what CK said to him about the appellant's sexual abuse, should not have been admitted under this rule. The first is that the judge improperly limited the scope of what he considered in establishing the "equivalent circumstantial guarantees of trustworthiness." In making this argument, the appellant does not dispute the guarantees actually found by the judge, but he contends the judge would not have been so convinced if the judge had not limited the scope of what he considered. The second, which itself has two parts, is that AK's testimony was not "more probative on the point for which it ... [was] offered than any other evidence" the Government actually produced. We will explain the two parts of this argument in our discussion in B., below.

### A.

Even though the declarant, CK, testified at trial, the military judge limited his consideration of the "equivalent circumstantial guarantees of trustworthiness" to only those circumstances surrounding the making of CK's out-of-court comments to AK. In other words, he relied upon the U.S. Supreme Court's decision in *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), and he did not have the benefit of our decision in *United States v. Martindale*, 36 M.J. 870 (N.M.C.M.R.1993), *aff'd*, 40 M.J. 348 (C.M.A.1994), and that of the Court of Military Appeals in *United States v. McGrath*, 39 M.J. 158 (C.M.A.1994).

■ In *Martindale*, we held that the Supreme Court's decision in *Wright*, concerning the "particularized guarantees of trustworthiness" required by the Confrontation Clause of the U.S. Constitution, was not identical to the "equivalent circumstantial guarantees of trustworthiness" required by the residual ex-

ception to the hearsay rule. 36 M.J. at 877. We stated "that when the Confrontation Clause is otherwise satisfied, the military judge possesses the discretion to consider the totality of circumstances, *including* corroborating evidence, in determining whether hearsay has 'equivalent circumstantial guarantees of trustworthiness'...." *Id.* at 880. This view of the law was confirmed by the Court of Military Appeals in *McGrath*.

Since CK testified at trial, the appellant has not raised a confrontation clause issue concerning the admission of the babysitter's testimony. He does argue, however, that the military judge should have considered evidence outside the giving of CK's statements to AK, and that because the judge limited the scope of his consideration, he excluded evidence the appellant contends would have undermined the "equivalent circumstantial guarantees of trustworthiness" in Mil.R.Evid. 803(24) and resulted in a contrary decision on the admissibility of CK's statements to AK.

■ There are several problems with this argument. First, as the quoted passage from our decision in *Martindale* indicates, the military judge has the *discretion* to consider the totality of circumstances. *See also McGrath*, 39 M.J. at 167 ("military judge did not abuse his discretion in considering corroborating evidence"). Second, what the appellant would have had the judge consider was evidence that (1) the appellant and CK's mother left pornography laying about the house and (2) the children in the family (including CK) had inadvertently seen their parents engaging in sexual intercourse. From this evidence, the appellant contends that CK could easily have been influenced to make the disclosure to AK by her exposure to such stimuli and that this exposure would explain CK's advanced knowledge of sexual matters—one of the specific indicia of reliability the military judge found in reaching his conclusion to admit AK's testimony. Record at 176–77.

As to this latter contention and without going into more graphic detail, the evidence the appellant refers to doesn't support his conclusion. The "pornography" the appellant refers to was never offered in evidence and the only evidentiary reference to it oc-

curred during the trial defense counsel's cross-examination of the [NIS] agent who conducted a search of the appellant's quarters. That agent responded affirmatively to the defense counsel's question whether the investigative report indicated that there "were over 90 adult magazines, such as Playboy and Penthouse[,] seized during the search," and that the agent "found no magazines devoted solely to child pornography." Record at 33. In response to the next question (whether the magazines depicted adult heterosexual activity), the agent stated that was the case "[i]n the majority of them with one exception." *Id.* There is no evidence that CK ever looked at these magazines or that anything she might have seen in them had any correlation to what she revealed to AK.

That is equally the situation in regard to CK's mother's testimony during the defense's case-in-chief that she remembered "one time ... [CK] had come in the room while ... [she and the appellant] were having intercourse and we ceased our activity." Record at 200. No further explanation of what CK might have actually seen was provided, and no attempt to renew the defense objection to AK's earlier testimony was made. Consequently, no correlation was made between what CK might have observed and the specific activity she described to AK.

■ We find nothing in these general references to pornographic magazines in the house or to CK walking into her parents' bedroom when they were engaged in sexual intercourse from which we would conclude that the military judge abused his discretion by not considering such information before deciding whether to admit AK's testimony under Mil.R.Evid. 803(24). Even if it was error for the military judge to have limited the scope of the evidence he considered in determining if "equivalent circumstantial guarantees of trustworthiness" existed as to CK's remarks to her babysitter, the other "evidence" the appellant now suggests the judge should have considered was so lacking in probative value the error would be harmless. In fact, not only do we find the military judge's findings concerning these guarantees to be fully supportable on this record, but

once we broaden the scope of what may be considered, as *McGrath* and *Martindale* suggest, we find even more guarantees of trustworthiness—particularly in the consistency of CK's disclosures to Mr. Mills—which are far more probative than the vague and undeveloped references to magazines and acts the appellant relies on in this argument.

### B.

The appellant also argues that AK's testimony was not "more probative on the point for which it ... [was] offered than any other evidence" the Government could have produced as required for admissibility under Mil.R.Evid. 803(24). As we have already indicated, this contention is premised on two separate arguments: first, on CK's own testimony at trial—when she gave a negative response to the trial counsel's question whether the appellant ever touched CK's body "with his private part" and when she said she was unable to remember what she told Mr. Mills or to remember who AK was, much less what she might have said to him; and, second, on the appellant's conclusion that AK's testimony was repetitive and superfluous once the military judge had admitted the testimony of Mr. Mills.

### (1).

■ As to the first point, the weight of authority appears to recognize that out-of-court statements by young children who have been the alleged victims of abuse may be admitted under the residual exception if the child is unwilling or unable to testify fully about the abuse. *See United States v. Farley,* 992 F.2d 1122 (10th Cir.1993); *United States v. Grooms,* 978 F.2d 425 (8th Cir. 1992); *United States v. Ellis,* 935 F.2d 385 (1st Cir.1991), *cert. denied,* 502 U.S. 869, 112 S.Ct. 201, 116 L.Ed.2d 160 (1991); *United States v. Spotted War Bonnet,* 882 F.2d 1360 (8th Cir.1989), *cert. denied,* 502 U.S. 1101, 112 S.Ct. 1187, 117 L.Ed.2d 429 (1992); *United States v. Renville,* 779 F.2d 430 (8th Cir.1985); *see also United States v. Lyons,* 33 M.J. 543 (A.C.M.R.1991), *aff'd,* 36 M.J. 183 (C.M.A.1992). In this case, it is apparent during CK's testimony that she did not want to talk about some forms of her father's alleged abuse and that she simply began to

respond negatively to any question that attempted to focus her attention on those areas—either in response to direct questions whether they occurred or to indirect questions about conversations she might have had with others about those forms of abuse. We find from her testimony and from the descriptions of CK's manner from other witnesses when she did not want to talk about certain subjects that CK was either unwilling or unable to fully discuss some aspects of the appellant's behavior during the trial, and we conclude that the military judge did not err in admitting AK's testimony simply because the declarant, CK, also testified at least in part about some of same behavior described in AK's testimony.

Our conclusion on this point seems to be consistent with the Court of Military Appeals recent decision in *U.S. v. Morgan*, which turned on the admissibility of four hearsay statements by Morgan's 13–year–old stepdaughter alleging that she had been raped by her stepfather even though the child testified, albeit reluctantly, at the trial. 40 M.J. 405, 406–08. The Court first held that three of the victim's four out-of-court statements, one to a neighbor as an excited utterance and two to two civilian social workers under the medical diagnosis and treatment exception, were properly admitted. *Id.* at 408–09. Then the Court held that the victim's statement to military investigators was admissible under the residual exception. *Id.* at 410. In making this latter determination, the Court concluded that "[a]bsent the actual, spoken testimony of the child, we believe her statement to ... [military investigators] was 'more probative' on the issue of whether the alleged rape actually occurred than would be any other evidence reasonably available to the Government." *Id.* at 409. Since the child actually testified and the Court concluded that Morgan's rights under the Confrontation Clause had been met, *id.* at 409–10, it

would appear[4] the Court either found the out-of-court statement to military investigators more probative than the child's in-court testimony or concluded that the child's in-court testimony simply did not bar the use of the residual exception. We note that Judge Wiss dissented from the Court's decision on this issue and complained "that the majority has erred by shuffling past one of the three absolute prerequisites for admission of hearsay under" the residual exception by passing over the fact that the child/victim in *Morgan* was available and did testify, albeit in a somewhat limited manner. 40 M.J. at 413 (Wiss, J., dissenting).

(2).

As to the second part of the appellant's argument, that AK's testimony should not have been admitted because better evidence (i.e., Mr. Mills' testimony) was available and actually admitted, the appellant cites the Court of Military Appeals' decision in *United States v. Giambra*, 33 M.J. 331 (1991), holding that it was error to admit the out-of-court statement of the victim's mother because both the victim (Giambra's 17–year–old stepdaughter) and the mother were available and both testified. As the Court stated: "Even reliable hearsay, however, does not come into evidence through the residual-hearsay exception unless it is 'necessary' to the proof of the case." *Id.* at 334. In the case before us, however, the Government did not seek to use AK's out-of-court statement but actually called AK as a witness. Consequently, the double hearsay problem posed in *Giambra* is not presented in the case before us now. *Cf. Morgan*, 40 M.J. at 410–11 (holding that the out-of-court statement by the victim's mother, which was admitted when the mother refused to testify at trial, was inadmissible under residual hearsay exception in Mil. R.Evid. 804(b)(5) because (a) much of her statement was double or triple hearsay that

---

4. It is difficult to assess the impact of the Court's decision in *Morgan* on this issue because the factual premise is unclear. The Court refers to the victim's statements (and her in-court testimony) as alleging rape when there is no indication Morgan was ever charged with that offense. 40 M.J. at 406 n. 1. The Court merely states that he was convicted of committing indecent acts (touching the victim's buttocks and breasts) and

communicating a threat. *Id.* Consequently, it is not readily apparent how the substance of the victim's various out-of-court statements related to the offenses Morgan was actually convicted of or what difference it would have made whether the statement to military investigators was more probative on an alleged rape when the accused was not convicted of that offense.

was "most unreliable" and (b) the circumstances surrounding the making of the statement were not supported by any "particularized guarantees of trustworthiness").

Other than *Giambra,* the appellant cites no authority for his contention except to quote our opinion in *Martindale* out of context. *Martindale* did not involve the exclusion or possible exclusion of other evidence because, as we pointed out in that opinion, there simply was no such other evidence. 36 M.J. at 881.

There is, nevertheless, a line of cases interpreting and applying this aspect of the residual exception, but those decisions, limiting the use of the residual exception because of other, more probative evidence, do not involve child sexual abuse or are otherwise factually dissimilar to the present case. In *United States v. Guaglione,* 27 M.J. 268 (C.M.A.1988), the Court of Military Appeals held that the pretrial statements of two coactors, who testified in court inconsistently with those statements, were not admissible as substantive evidence under the residual clause against an officer charged with fraternization with enlisted personnel and use of marijuana partly because the live testimony of another witness to the same events was available and that witness actually testified. The Court stated:

> Although there appear to be few opinions on this aspect of the residual hearsay exception, United States Courts of Appeals have held ... that, if a party who proposes to introduce a pretrial statement under the "residual exception" has a witness who will testify in court to the facts sought to be provided, the trial judge should not admit the statement under Fed.R.Evid. 803(24).

*Id.* at 275 (footnote omitted) (citing and discussing *Netterville v. Missouri,* 800 F.2d 798 (8th Cir.1986) (civil rights complaint for racial discrimination); *United States v. Welsh,* 774 F.2d 670 (4th Cir.1985) (criminal trial for the interstate transportation of stolen property); *United States v. Leslie,* 542 F.2d 285 (5th Cir.1976) (criminal trial for transporting and selling stolen cars)).

*Guaglione, Welsh, Netterville,* and *Leslie* are consistent with two more recent decisions from the U.S. Courts of Appeals. In *Par-*

*sons v. Honeywell, Inc.,* 929 F.2d 901 (2d Cir.1991) (products liability complaint), the out-of-court declarant was available to testify in person, and in *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir.1991) (civil rights action for police brutality), the three witnesses who had made relevant out-of-court statements were also available to testify. In both cases, the respective Court of Appeals held that the out-of-court statements should not have been admitted under the residual exception. In the present case, however, the "other evidence" the appellant would have had the judge use to exclude AK's testimony was not the testimony of CK, the person AK was quoting, but that of a third witness, Mr. Mills, who was also recounting other statements by CK through a different exception to the hearsay rule.

■ At least in cases involving the abuse of young children and the residual exception, the reported decisions do not appear to compel the Government to choose between several witnesses to essentially the same or similar out-of-court statements by the child. Most of those decisions, however, have not made a substantive comparison of the evidence offered, even though it is apparent that multiple sources were admitted at trial.

In *McGrath,* the Court of Military Appeals considered two out-of-court statements by the victim even though she testified at trial and did not limit the Government's ability to offer both under the residual exception. 39 M.J. 158. In *Farley,* which involved theories of admissibility identical to the present case, the U.S. Court of Appeals for the 10th Circuit would have admitted a child/victim's out-of-court statements to a psychologist under the medical diagnosis and treatment exception, albeit on alternate grounds, in addition to the child's statements to her mother under the residual exception. 992 F.2d at 1125. In *Spotted War Bonnet,* the Court of Appeals for the 8th Circuit held that extra-judicial statements made by both children/victims to a state social worker and to a clinical psychologist at different times were admissible under the residual exception even though both victims testified at trial. 882 F.2d at 1363–64. *See also Clark* (holding child/victim's statement to babysitter admissible un-

der residual exception in addition to statement to physician under medical treatment exception); *United States v. Dunlap,* 25 M.J. 89 (C.M.A.1987) (holding child/victim's statement to police investigator admissible under residual exception as well as identical, corroborating statement to babysitter); *United States v. Powell,* 22 M.J. 141 (C.M.A.1986) (holding heroin overdose victim's statement to police identifying her source admissible under residual exception in addition to admission by accused that he had supplied victim); *United States v. Rudolph,* 35 M.J. 622 (A.C.M.R.1992) (holding child/victim's testimony at pretrial investigation admissible under residual exception in addition to doctor's testimony under medical treatment exception); *United States v. Fink,* 32 M.J. 987 (A.C.M.R.1991) (holding statement by child/victim to teacher's aide admissible under residual exception in addition to statements to school nurse and pediatrician under medical treatment exception); *United States v. Brown,* 25 M.J. 867 (A.C.M.R.1988) (holding multiple statements by child/victim and child's mother admissible under residual exception).

We conclude that this aspect of Mil.R.Evid. 803(24) does not prevent the use of the residual exception in child sexual abuse cases simply because other evidence, also admissible under exceptions to the hearsay rule, is used to prove essentially the same point, particularly when, as in this case, the opposing party has attacked the credibility of that other evidence.[5] Consequently, the Government was not required to make a choice between Mr. Mills' testimony, which was admissible under the medical diagnosis and treatment exception, Mil.R.Evid. 803(4), and AK's testimony, under the residual exception, Mil.R.Evid. 803(24).

### IV.

As to the appellant's fourth assignment of error, he argues that his trial defense counsel

was ineffective because he failed to offer CK's testimony at a state juvenile court hearing as substantive evidence. Counsel offered the testimony (Defense Ex. B) only for impeachment purposes. Record at 177–78. In the excerpts of her juvenile court testimony that were admitted at this court-martial, CK stated that her father took a shower with her with all his clothes on, that she had never seen her father's private parts, that she never touched his private parts, that he never touched her or touched her in "a nasty way" when she was showering with him, and that he never hurt her while he was taking a shower with her. The Government has conceded that this testimony was admissible under Mil.R.Evid. 613 as a substantive part of the defense's case.

Even if we assume under the applicable, two-part standard that the performance of the appellant's trial defense counsel was deficient in this regard, we fail to see how there is any reasonable probability that, but for the deficiency, the result of the court-martial would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Bono,* 26 M.J. 240, 242 (C.M.A.1988). The military judge had already heard CK testify that the appellant never touched any part of her body with his private parts, yet the judge convicted the appellant of two indecent acts that included touching CK's vagina and anus with his penis based upon the testimony of Mr. Mills and AK. Consequently, the military judge already had to make a decision concerning the credibility of CK's sworn contradiction of the details of her earlier statements and found those earlier statements more believable beyond a reasonable doubt. Under these circumstances, we conclude that the appellant has not sustained his burden of establishing that the result of this court-martial would have been different if his trial defense coun-

---

5. Although the Government has not argued this point, it certainly could be said that AK's testimony was the only corroborative evidence the Government could reasonably produce concerning Mr. Mills' testimony. During cross-examination of Mr. Mills, the defense attempted to establish that Mr. Mills may have suggested to CK what he

expected her to say about her father. That CK imparted much the same information to AK months before Mr. Mills talked with her certainly counters any contention that Mr. Mills influenced CK to fabricate statements reporting the same sexual abuse.

sel had only offered CK's juvenile court testimony as substantive evidence.

## V.

We find no merit in the appellant's remaining assignments of error. We expressly find the punishment of 10 years' confinement to be an appropriate part of the sentence in this case.

Accordingly, the findings of guilty and the sentence as approved on review below is affirmed.

Senior Judge REED and Judge KEATING concur.