UNITED STATES, Appellee

v.

Gary M. KELLEY, Electrician's Mate
First Class, U.S. Navy, Appellant.

No. 95–0413.
Crim.App. No. 93–1208.

U.S. Court of Appeals for
the Armed Forces.

Argued May 21, 1996.

Decided Sept. 30, 1996.

For Appellant: *Lieutenant Gerard Wm. Wittstadt, Jr.,* JAGC, USNR (argued); *Major Hagen W. Frank,* USMC and *Lieutenant D. Jacques Smith,* JAGC, USNR (on brief).

For Appellee: *Lieutenant Randy S. Kravis,* JAGC, USNR (argued); *Colonel Charles Wm. Dorman,* USMC, *Lieutenant R.W. Sardegna,* JAGC, USNR, *Lieutenant Andrew J. Waghorn,* JAGC, USNR, and *Lieutenant Commander Eric P. Johnson,* JAGC, USNR (on brief).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a general court-martial at Naval Surface Group, Long Beach, California, convicted appellant, contrary to his pleas, of committing indecent acts (3 specifications) and taking indecent liberties with his 6–year–old daughter, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 10 years, forfeiture of $818.00 pay per month for 60 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 42 MJ 769.

We granted review of the following issues:

## I

WHETHER TESTIMONY OF A FAMILY COUNSELOR CONCERNING STATEMENTS BY THE PUTATIVE VICTIM WAS PROPERLY ADMITTED UNDER THE MEDICAL TREATMENT EXCEPTION TO THE HEARSAY RULE WHERE, ALTHOUGH THE RECORD ESTABLISHES THAT THE DECLARANT PERCEIVED A NEXUS BETWEEN HER ACCUSATIONS AND HER VISITS TO THE COUNSELOR, IT IS UNCLEAR WHETHER SHE WAS ACTUALLY SUFFERING FROM ANY PARTICULAR DISORDER OR SYMPTOM, PERCEIVED THAT SHE WAS SUFFERING FROM ANY PARTICULAR MALADY, OR UNDERSTOOD THAT TALKING TO THE COUNSELOR WOULD ALLEVIATE ANY SUCH MALADY.

## II

WHETHER, IN FINDING A STATEMENT ADMISSIBLE UNDER THE RESIDUAL HEARSAY EXCEPTION, THE MILITARY JUDGE SHOULD HAVE CONSIDERED CIRCUMSTANCES OUTSIDE THE MAKING OF THE STATEMENT IN ASSESSING WHETHER IT POSSESSED SUFFICIENT INDICIA OF RELIABILITY AND, IF SO, WHETHER THE STATEMENT WAS SUFFICIENTLY RELIABLE FOR ADMISSION IN LIGHT OF ALL THOSE CIRCUMSTANCES.

### *Factual Background*

Although appellant was charged with rape and forcible anal sodomy of his 6–year–old daughter, CK, the military judge found him guilty of the lesser offenses of committing indecent acts by "touching [CK]'s vagina and crotch with his penis" and "touching her buttocks and anus with his penis." The military judge also found appellant guilty of committing indecent acts by fondling CK's vagina and taking indecent liberties by causing CK to fondle his penis, except for the words, "at divers times." The prosecution witnesses included CK, who was 7 years old at time of trial; Mr. Mills, a licensed family counselor; and Andy K, a baby-sitter for CK.

Mr. Mills was accepted by the court as an expert in child sexual abuse. He testified that CK was "a client" whom he saw 4 times a month for the 7 months preceding the trial. Each session was approximately 50 minutes long. Mr. Mills testified that he was introduced to CK as a "talking doctor," to whom "she could talk about whatever she wanted, her feelings, anything." He testified that CK appeared to understand the purpose of his sessions with her, and that on one occasion she asked him "to help her with taking out anger on others." When asked if CK said "that she knew actually what your function was," Mr. Mills responded, "I don't believe that's in her capabilities as a young child." In response to questions by the military judge, Mr. Mills testified that he did not tell CK that she was being treated for sexual abuse, "because then I would be leading the client and that doesn't go very well in many courts, so I didn't tell her she's here because she was sexually abused."

Mr. Mills testified that on July 16, 1992, CK spoke in the third person, saying that "a child that washed their father wouldn't like it." CK said that her father's "private part would get bigger." On July 23, CK said that she showered with her father "and that they would pretend that he was a baby and she would wash him." CK told Mr. Mills that "when she washed his private parts, he would moan."

On July 30, CK told Mr. Mills "that dad did nasty things to her...." She told him "that he put his private part in her back private part." When Mr. Mills asked her to point to the part of the body she was talking about, she pointed to the anal area. On August 6, CK told Mr. Mills, "he sticked [sic] his private part in my back private part and put his private part in her front private part and then they rubbed each other."

On September 10, CK said that appellant put his fingers in her vagina. Mr. Mills gave CK a female anatomical doll and asked her to show him what she meant. She asked for a male doll, asked Mr. Mills to close his eyes and say he was peeking, and attempted to

put the penis of the male doll into the vagina of the female doll. She also placed the face of the male doll on the female doll's chest area and said the male doll was sucking on the female doll's chest area.

On October 1, CK told Mr. Mills that "she had seen yellow pee, white pee, and red pee from her father." Mr. Mills testified that he assumed "the red pee to have something to do with red lotion," and "white pee either to be something to do with lotion or ejaculation."

On October 8, CK told Mr. Mills that appellant had touched her in the bathroom, her own bedroom, and her parents bedroom. She said that "it hurt both in the back and in the front." She demonstrated what had happened: "she laid on the table, spread her legs apart, and wiggled her hips back and forth...."

On December 10, Mr. Mills asked CK her feelings about her father. She responded "that she loves him a little and that she wanted to go back with mom and dad...." Mr. Mills testified that CK's play then "became highly sexualized." He explained:

> She started pretending as if she was in a bathroom and had taken her clothes off and wanted other children to see her body naked and she changed to calling me her son and saying that she was going to bath[e] me completely and I told her that I already knew how to do that myself and she did not take that as an answer, that she would go ahead and do that, obviously that didn't take place. Shortly after that she called me her husband and pretended to get into a bathtub, pretending to take her clothes off, asking me to do the same and told me to get on top of her, to which I asked then what happens and she said we kiss and I said then what, and she showed a motion which resembled a pelvic thrust. I asked her what part of his body touched her body and she put her hand up to her genital area and drew her hand away saying the long part and then put her hand between her legs pushing it in and out saying right here.

Mr. Mills testified that CK described or demonstrated acts that would not ordinarily be within the knowledge and experience of a child her age. He specifically referred to CK's description of touching her father and her statement that "his private part grew when she touched it."

Mr. Mills testified that during the last session preceding the trial, January 14, he attempted to persuade CK that her father had not done what she had described. CK "very insistently said that he had."

Mr. Mills testified that sometimes CK would ask him to stop questioning her. She would deny that an event happened if she wanted to "stop talking about something that was difficult."

CK testified as a prosecution witness. She said that appellant "does nasty stuff" to her. When asked to explain the "nasty stuff," she testified that appellant touched her vaginal area and her buttocks. She testified that she saw appellant's "private part" while she was in the shower with appellant and that she washed his penis. She denied that appellant touched her with his "private part."

On cross-examination, CK responded to virtually every question about the charged offenses by saying, "I don't remember." On redirect, CK said she did not remember her baby sitter, Andy K. When asked if appellant "put his privates in your privates," she said, "No." Finally, in response to questioning by the military judge, she testified that she washed appellant's "private parts" in the shower but denied that appellant asked her to do it.

Andy K, a 16–year–old member of a Navy family residing near appellant's family, testified that he baby-sat for CK and other children. He testified that in early April he was caring for 8 or 9 children during a bible study when CK approached him. CK was "upset" and "missing her mom." He testified that he gave CK a doll and that she said, "me and my daddy take showers." Then she said, "[M]e and my daddy have sex." When he told her that "she shouldn't talk like that[,] ... she whispered it in my ear and she pointed to her privates." He testified that CK also said that appellant "makes white stuff come out on her" and "puts his

privates in her privates." Andy K was "surprised" and told his mother about the conversation.

Andy K also testified that he overheard CK telling his sister that she and appellant took showers together. He testified that he asked, "[W]hat are you guys talking about and [CK] said, 'me and my dad take showers.'" Finally, he testified that CK told him "that her dad told her not to tell anyone ... especially women."

Over defense objection, the military judge admitted Andy K's testimony about CK's statements as residual hearsay under Mil. R.Evid. 803(24), Manual for Courts–Martial, United States (1995 ed.). He explained the basis for his ruling as follows:

> [T]he court finds that the factual basis that I find to support the conclusion that there is adequate indicia of reliability regarding [CK]'s statement to Andy are the fact that it was spontaneous, voluntary, unprompted. There is no evidence whatsoever to suggest that any of the matters that she related to him in detail were suggested by anyone else. There has been absolutely no motive or reason brought forth to suggest that she had any, as a 6 year old, motive whatsoever to lie. In the matters that she related to him and the way she described them leaves [sic] me to conclude that they must have been based on her first hand observation of those events and then particularly in view of the fact we're talking about a 6 year old and additionally, the things she related to him, particularly putting his private parts in her private parts, the business about making white stuff come out of him when they do that. I mean, it just boggles the mind that a 6 year old would be aware of such things unless in fact she had experienced them. As the Court said in CLARK [35 MJ 98 (CMA 1992)], that information and knowledge is not within the realm of common knowledge for a normal 5 [sic] year old child.

*Medical-Treatment Exception (Issue I)*

Appellant contends that the military judge erred because the record fails to show that CK actually suffered from any disorder or symptom, perceived that she was suffering from any particular malady, or understood that talking to Mr. Mills would alleviate any such malady. The Government argues that the record shows that CK understood, in a manner appropriate to her age, that she could receive some medical benefit from her talks with Mr. Mills.

Mil.R.Evid. 803(4) provides that statements made for purposes of medical diagnosis or treatment are not excluded by the hearsay rule, even if the declarant is available as a witness. This "medical exception" applies to "[s]tatements made for purposes of medical diagnosis or treatment and described medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

■ The medical-treatment exception applies to statements made to psychologists, social workers, and other health-care professionals. *United States v. Morgan*, 40 MJ 405, 408 (CMA 1994), citing *United States v. Welch*, 25 MJ 23, 25 (CMA 1987). In *United States v. Edens*, 31 MJ 267, 269 (1990), we set out the following two-pronged test that must be satisfied to establish admissibility:

> [F]irst the statements must be made for the purposes of "medical diagnosis or treatment"; and second, the patient must make the statement "with some expectation of receiving medical benefit for the medical diagnosis or treatment that is being sought."

The key factor in deciding if the second prong is met is "the state of mind or motive of the patient in giving the information ... and the expectation or perception of the patient that if he or she gives truthful information, it will help him or her to be healed." *United States v. Faciane*, 40 MJ 399, 403 (CMA 1994), quoting *Clark*, 35 MJ at 105.

■ We review a military judge's evidentiary rulings for abuse of discretion. If the ruling involves a mixed question of law and fact, we review factfinding under the

clearly-erroneous standard and conclusions of law under the *de novo* standard. We will reverse for an abuse of discretion if the military judge's findings of fact are clearly erroneous or his decision is influenced by an erroneous view of the law. *United States v. Sullivan*, 42 MJ 360, 363 (1995).

When the medical exception to the hearsay rule is involved, the question whether the patient has the requisite state of mind and expectation of receiving a medical benefit is a preliminary question of fact under Mil.R.Evid. 104(a). As such, it will be set aside "only if clearly erroneous." *United States v. Quigley*, 40 MJ 64, 66 (CMA 1994).

The military judge found that CK had the requisite state of mind and expectation of medical benefit. The record reflects that Mr. Mills presented himself to CK as a doctor, that CK appeared to understand the purpose of his sessions with her, and that on one occasion she asked him to "help her with taking out anger on others." While, as Mr. Mills explained, CK was too young to understand the exact role of a family counselor, the record supports the military judge's preliminary findings of fact that CK understood that Mr. Mills was trying to help her deal with unpleasant thoughts and feelings, and that she needed to tell him what she was thinking and feeling. Accordingly, we hold that the military judge's findings of fact are not clearly erroneous and that he did not abuse his discretion by admitting Mr. Mills' testimony under Mil.R.Evid. 803(4).

### Residual Hearsay (Issue II)

Appellant argues that in admitting CK's statements to Andy K, the military judge erred by considering only the circumstances surrounding CK's declarations and not considering other facts tending to undermine the reliability of CK's statements. The Government argues that the military judge considered all relevant circumstances.

Mil.R.Evid. 803(24), the so-called "residual hearsay" rule, allows admission of evidence "not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness...." To admit residual hearsay, the court must determine:

(A) the statement is offered as evidence of a material fact;

(B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(C) the general purposes of these rules and the interests of justice will best be served by admission of the statement in evidence.

Mil.R.Evid. 803(24). The rule is taken from Fed.R.Evid. 803(24) "without change" and should "be employed in the same manner as it is generally applied in the Article III courts." Drafters' Analysis of Mil.R.Evid. 803(24), Manual, *supra* at A22–53. The residual-hearsay rule sets out three requirements for admissibility: (1) materiality, (2) necessity, and (3) reliability. *See United States v. Pollard*, 38 MJ 41, 49 (CMA 1993); *United States v. Giambra*, 33 MJ 331, 334 (CMA 1991). This case involves the necessity and the reliability prongs.

The necessity prong "essentially creates a 'best-evidence' requirement." *Larez v. City of Los Angeles*, 946 F.2d 630, 644 (9th Cir.1991). The legislative history of Fed.R.Evid. 803(24) reflects congressional intent "that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances." S.Rep. No. 1277, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 7051, 7066. Federal courts have recognized that "one such exceptional circumstance generally exists when a child abuse victim relates to an adult the details of the abusive events." *United States v. Shaw*, 824 F.2d 601, 609 (8th Cir.1987). The more liberal approach in child abuse cases extends to the "necessity" requirement. Even though residual hearsay may be "somewhat cumulative, it may be important in evaluating other evidence and arriving at the truth so that the 'more probative' requirement can not be interpreted with cast iron rigidity." *Id.* at 610, citing J. Weinstein & M. Berger, 4 *Weinstein's Evidence*, para. 803(24)[01] at 803–379 (1985). A military judge has "considerable discretion" in deter-

mining whether to admit residual hearsay. *United States v. Pollard,* 38 MJ at 49.

We hold that Andy's testimony meets the "necessity" requirement. CK's testimony established little. The prosecution relied solely on Mr. Mills to establish the details of the offenses. Without Andy's testimony, Mr. Mills' testimony was unsupported and uncorroborated. Andy's testimony, although limited, provided independent corroboration. As such, it was "important in evaluating other evidence and arriving at the truth...." *United States v. Shaw, supra* at 610.

We turn finally to the reliability prong. Appellant concedes that a military judge may consider "factors such as spontaneity, consistent repetition, mental state of the declarant, motive to fabricate, [and] use of terminology beyond the declarant's years" in assessing the reliability of the evidence. Final Brief at 20, citing *Doe v. United States,* 976 F.2d 1071 (7th Cir.1992). Appellant argues, however, that the military judge erred by limiting his consideration to the circumstances surrounding the declarations and not considering other evidence that suggested that CK's declarations to Andy K were not reliable. Appellant points to evidence that CK's parents "left pornography laying [sic] about the house" and that she and her siblings "had inadvertently seen their parents having intercourse." Final Brief at 23.

The Court of Criminal Appeals rejected this argument, stating that once confrontation is satisfied, the military judge "has the discretion" to consider other evidence but is not required to do so. 42 MJ at 774. We agree with the court below. In *United States v. McGrath,* 39 MJ 158 (1994), we held that a military judge has discretion to consider corroborating evidence beyond the circumstances of the declaration once confrontation

is satisfied. In *United States v. Martindale,* 40 MJ 348, 349 (1994), we recognized that *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), imposed a more restrictive rule than Mil.R.Evid. 803(24), and that "it was permissible" to consider other evidence if confrontation was waived. Here we find no abuse of discretion by the military judge in limiting his reliability assessment to the circumstances surrounding the declaration. While it would have been permissible for him to consider extrinsic circumstances, he was not required to do so.* Furthermore, we agree with the court below that if the military judge had considered corroborative evidence, including Mr. Mills' detailed testimony and CK's in-court testimony, the case for admitting the evidence would have been even stronger. 42 MJ at 775.

The military judge relied on the "spontaneous, voluntary, unprompted" nature of the declarations, the absence of a motive to fabricate, the fact that CK related matters beyond common knowledge of a child, and CK's statement that appellant told her not to tell anyone, "especially women." Although not specifically relied on by the military judge, we note Andy K's testimony that CK was "upset" and "missing her mom" when she made her surprising comment to him. These are all well-recognized indicators of reliability. *See Idaho v. Wright,* 497 U.S. at 821, 110 S.Ct. at 3149–50; *United States v. Grant,* 42 MJ 340, 343 (1995); *United States v. Pollard,* 38 MJ at 49–50 (spontaneity, mental state of declarant, lack of motive to lie); *United States v. Clark,* 35 MJ at 106–07 (absence of suggestive questioning, knowledge "not within the ken" of child). Accordingly, we hold that the military judge did not

---

* This holding is not a "standardless rule of discretion" favoring the Government, as asserted by Judge Sullivan. The rules of evidence contemplate that a military judge will be "a real judge," exercising discretion rather than slavishly applying mathematical formulae. *See United States v. Graf,* 35 MJ 450, 465 (CMA 1992) ("In our view, the Uniform Code of Military Justice contemplates that a military judge be a real judge as commonly understood in the American legal tradition."). Our holding favors neither prosecution nor defense. It favors the proponent of evidence, either prosecution or defense, by broadening the number of factors that may be considered. A holding favoring admissibility is consistent with the purposes of the rules. *See* Mil.R.Evid. 102, Manual for Courts–Martial, United States (1995 ed.) ("These rules shall be construed ... to the end that the truth may be ascertained"); Mil.R.Evid. 402 ("All relevant evidence is admissible, except as otherwise provided....").

abuse his "considerable discretion" in admitting Andy K's testimony as residual hearsay under Mil.R.Evid. 803(24).

## Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge CRAWFORD concur.

SULLIVAN, Judge (concurring in part and in the result and dissenting in part):

I think the right result is reached today. However, I dissented in *United States v. McGrath*, 39 MJ 158 (1994), and *United States v. Martindale*, 40 MJ 348 (1994), to the majority's holding that independent corroborative circumstances could be considered in admitting evidence under the residual-hearsay rule. Mil.R.Evid. 804(b)(5) and 803(24), Manual for Courts–Martial, United States, 1984. Today the majority effectively adopts that position by establishing an essentially *standardless* rule of discretion permitting judges to refuse to consider such circumstances under Mil.R.Evid. 803(24). Otherwise, the only principle which I can draw from the two cases is that the Government can use such circumstances to admit evidence under a residual-hearsay rule but the accused cannot use such circumstances to exclude evidence under such a rule. I would have a problem with such a holding. *See* Art. 46, Uniform Code of Military Justice, 10 USC § 846.

Moreover, let me express my growing uneasiness with the continuous expansion of and reliance upon the medical exception to the hearsay rule. Mil.R.Evid. 803(4). Here, a 6–year–old child's statements to a family counselor are taken as proof of a crime under Fed. and Mil.R.Evid. 803(4). Every day in America, countless statements are given in emergency rooms and medical offices by children, young adults, middle-aged, and elderly patients to doctors of medicine and their assistants. Are all these statements true? Are all these statements admissible in court as the sole proof of a crime? I and my fellow judges should wonder about this and perhaps tighten application of this rule. I suspect that many statements given under the current breadth of the medical-exception umbrella, if closely scrutinized, may not be the complete truth. Motives should be thoroughly examined at the trial level before such statements are allowed as evidence in court.

EVERETT, Senior Judge (concurring in part and dissenting in part):

Although I harbor the same general reservations that Judge Sullivan expresses about the extent to which military judges have applied the hearsay exception related to medical diagnosis or treatment, I do agree with the majority's treatment of Issue I and concur in it.

As to Issue II, I disagree with the majority that the Government, as the proponent of the evidence, satisfied the "necessity" requirement for admissibility of residual hearsay under Mil.R.Evid. 803(24), Manual for Courts–Martial, United States, 1984. CK herself testified and was subject to cross-examination. Surely, then, she constituted the "best evidence" of what appellant allegedly did to her, as compared to what Andy would testify that CK told him as to what appellant allegedly did to her. *See Larez v. City of Los Angeles*, 946 F.2d 630, 644 (9th Cir.1991) ("necessity" prong equates to a best-evidence requirement).

Implicitly responding to this argument, the majority subjectively concludes that "CK's testimony established little." 45 MJ at 281. The majority's own summary of CK's testimony, however, belies that evaluation. 45 MJ at 278–79. I recognize that, in certain respects, her testimony did contradict what Andy subsequently testified to regarding what she had told him. That inconsistency, however, does not make Andy's testimony "necessary" as the "best evidence" of what appellant allegedly did to CK. Just because the prosecution did not *like* some of the things CK said in her testimony does not make Andy's more prosecution-friendly testimony "necessary." Rather, the inconsistency between CK's testimony and what she allegedly had told Andy, at best, provides the

basis for Andy's testimony to be considered for the narrow purpose of impeaching CK with a prior inconsistent statement after CK herself had been asked about it. *See* Mil. R.Evid. 613(b).

On this basis, I believe that admission of Andy's testimony as substantive evidence was error. Moreover, the majority's discussion of the supposed necessity for Andy's testimony makes the best argument that admission of that testimony was not harmless to appellant. *See* Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a). Accordingly, I would set aside the findings and sentence and authorize a rehearing.

Since I would dispose of Issue II on the basis of the lack of the *necessity* for Andy's testimony, I do not need to reach the question of the *reliability* of CK's out-of-court statements to Andy and whether the military judge properly limited his concern in that regard to the circumstances surrounding the making of that statement. Nonetheless, in light of the majority opinion, I pause to offer a short comment in connection with that question.

The cases cited both by the majority and by Judge Sullivan—*United States v. McGrath*, 39 MJ 158 (CMA 1994), and *Unit-ed States v. Martindale*, 40 MJ 348 (CMA 1994)—presented the question whether the military judge could look beyond the circumstances surrounding the declaration to find corroboration of reliability, once constitutional confrontation had been satisfied. As Judge Sullivan points out, this Court has divided on that question, with the majority holding that a judge may do so in his discretion and the dissenters finding that he lacks that discretion under the express terms of Mil.R.Evid. 803(24) and 804(b)(5).

Here, by contrast, appellant complains that the military judge did not exercise discretion to look beyond the immediate circumstances to find the statement *un*reliable. In this context, regardless of the different views expressed in *McGrath* and *Martindale*, nothing in either of the rules of evidence just mentioned or in *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), precludes a judge from considering extrinsic circumstances not related to the taking of a statement in deciding to *exclude* out-of-court statements as unreliable. At the same time, as the majority points out, nothing *requires* a judge to exercise his discretion in this manner.