EFFRON, Judge
(concurring in part and in the result):
I agree with the majority opinion’s conclusion that J.H.’s statements to Drs. Novek and Craig were properly admitted under Mil. R. Evid. 803(4). There are sufficient indicia of J.H.’s subjective intent in the record to show that she understood the purpose for speaking with each doctor and, in return, expected to receive a medical benefit as a result of those communications. See 57 MJ at 80-81. However, the record is less than clear as to the motivation of her younger sister, R.H., in speaking to Dr. Craig. The record does not demonstrate that R.H. (1) perceived a link or otherwise understood that her statements to Dr. Craig were for the purpose of medical diagnosis or treatment; (2) believed she needed to be helped, even in a general sense; or (3) expected to medically benefit from responding truthfully when speaking with Dr. Craig.
We have held that “[t]he key factor in deciding if the second prong is met is ‘the state of mind or motive of the patient in giving the information ... and the expectation or perception of the patient that if he or she gives truthful information, it will help him or her to be healed.’ ” United States v. Kelley, 45 MJ 275, 279 (1996) (citation omitted). This standard applies equally to adults and children. As this Court made clear in United States v. Williamson, 26 MJ 115 (CMA 1988), “Although there may be some relaxing of the quantum of proof in those situations where a child is being treated, the facts and circumstances must support a finding that both prongs of the test were met.” Id. at 118, quoted in United States v. Edens, 31 MJ 267, 269 (CMA 1990).
In this case, the majority opinion relies entirely on R.H.’s spontaneous statement, “I’ve had medicine for a rash before,” 57 MJ at 77, and the military judge’s finding, based on Dr. Craig’s testimony, that “[e]ven though [R.H.] probably didn’t know what the word [‘]counseling[’] meant, ... Dr. Craig said talk to for—to make you better or words to that effect,” to satisfy the test’s subjective prong. R.H.’s spontaneous statement merely establishes that she may have associated doctors with treating physical ailments. It does not demonstrate that R.H. acted on the belief that disclosing information about appellant’s abuse of her sister would enable Dr. Craig “to make [her] better.” Cf. Olesen v. Class, 164 F.3d 1096, 1098 (8th Cir.1999) (reversing where physician merely explained “what was going to happen” during the physical examination and no evidence was presented to show the child-victim understood revealing her abuser’s identity was important to diagnosis and treatment).
I agree with the majority that the fact R.H. may not have known what the word “counseling” meant does not, in and of itself, render her statements inadmissible under the medical exception. However, the burden remained on the prosecution to present evidence establishing that R.H. understood she was there to receive counseling services or, at minimum, help in a general sense, although she may not have known “counseling” *82 was the term to describe the treatment. United States v. Avila, 27 MJ 62, 66 (CMA 1988) (“[Ujnless it appears that the child knows at least that the person is rendering care and needs the information in order to help, the rationale for the [medical] exception disappears entirely.”); Kelley, 45 MJ at 277, 280 (affirming where counselor introduced himself as a “talking doctor” and “the record supported] the military judge’s preliminary findings of fact that [the six-year-old victim] understood that Mr. Mills was trying to help her deal with unpleasant thoughts and feelings, and that she needed to tell him what she was thinking and feeling.”). The prosecution failed to present such evidence in this case.*
Although R.H.’s statements were erroneously admitted, I believe the error was harmless in light of the Government’s overwhelming evidence of appellant’s guilt. The DNA evidence of appellant’s semen stains on his daughter’s pajamas and undergarments, the physical evidence of abuse observed by Drs. Novek and Craig, appellant’s admission to touching his daughter’s vaginal area, and J.H.’s statements admitted through Drs. Novek and Craig establish appellant’s guilt beyond a reasonable doubt.

 We have upheld admission of a six-year-old's statements to a psychologist upon finding that the second prong was "narrowly” satisfied where the mother testified that she " 'encourag[ed]’ her ‘daughter to speak openly with Ms. Miller [the psychologist] because she was there to help her’; and 'I’ve always asked [my daughter] to tell the truth.’ ” United States v. Dean, 31 MJ 196, 200-01 (CMA 1990). There is no evidence in the record to show that R.H.'s grandparents, who had custody of her at the time of her interview with Dr. Craig, explained to R.H. the purpose of her visit with Dr. Craig or the importance of being truthful or that she needed to be truthful so that Dr. Craig could properly treat her. See also United States v. Siroky, 44 MJ 394, 400 (1996) (“[W]e recognize that a small child may not be able to articulate that he or she expects some benefit from treatment. Thus, it is often important for [the child's] caretakers to explain to [the child] the importance of the treatment in terms that are understandable to the child.’’). As the majority opinion notes. Dr. Craig testified that she asked the grandparents to "prepare” the children for a "checkup” and to tell them to be truthful. However, no evidence was presented to show that the grandparents did in fact prepare R.H. as requested.