UNITED STATES of America

v.

Artemio G. SALINAS, Aviation
Machinist's Mate Second
Class (E–5), U.S. Navy.

NMCCA 200700331.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 3 Nov. 2006.

29 Jan. 2008.

For Appellant: Maj Richard Belliss,
USMC.

For Appellee: Capt James Weirick,
USMC.

Before FELTHAM, Senior Judge,
O'TOOLE, and MITCHELL, Appellate
Military Judges.

**PUBLISHED OPINION OF THE COURT**

O'TOOLE, Judge:

The appellant was convicted by a general court-martial composed of officer and enlisted members, contrary to his pleas, of rape and sodomy of a child under the age of 12 years, in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925. The appellant was sentenced to 20 years of confinement, reduction to pay grade E–1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority approved the adjudged sentence.

We have considered the record of trial, the appellant's four assignments of error,[1] the Government's response, the appellant's reply, and the excellent oral arguments of counsel before the court on 25 October 2007. We conclude that the findings and sentence are correct in law and fact and that no error was committed that was materially prejudicial to the substantial rights of the appellant. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

**Background**

"N" is the six-year-old girl identified as the victim in the rape and sodomy charges in this case. At the time of the offenses, she had two sets of parents: her biological mother, Brandy, and her husband, the appellant; and her biological father, and his wife, Amanda. N generally resided with her mother and the appellant, but regularly visited her father and step-mother, as she was doing on 25 February 2005. That day, N was not feeling well, so she watched cartoons during the morning. In the afternoon, her father asked N how she was feeling and she responded that she still felt sick. Her father then asked, "Where does it hurt?" She responded, "my front hurts," or words to that effect, pointing to her genital area. She continued to explain, "Temo pushed it too hard." "Temo" was a nickname for the appellant. These responses, observed by her father and Amanda, so surprised them that Amanda called her own mother for advice, while N's father called Brandy, who came to see her child. The child repeated similar statements to Brandy and demonstrated what had happened using a Barbie and a Superman doll. Later that day, the child's mother and maternal grandfather, a retired hospital corpsman, conducted a physical exam to determine if there was any obvious injury to the child. They found no injury, but, based on the child's statements, they notified military and civilian authorities.

Two days later, the child was interviewed by a social worker from Child Protective Services. On the third day, N was interviewed by a child forensic specialist and a sexual assault exam was performed at a local hospital. That exam apparently revealed a tear in the child's hymen.[2] Thereafter, upon

---

1. The appellant's assignments of error are:
   I. The Military Judge abused his discretion in admitting, pursuant to Military Rule of Evidence 803(4), the testimony of the family therapist, Dr. Borrego, that the alleged victim stated that appellant was the particular person who raped and sodomized her.
   II. The Military Judge abused his discretion in admitting, pursuant to Military Rule of Evidence 803(4), the testimony of the family therapist, Dr. Borrego, that the alleged victim described appellant's genitalia in particular detail.
   III. The Military Judge abused his discretion in allowing the family therapist, Dr. Borrego, to provide expert testimony that the alleged victim had been diagnosed with post traumatic stress disorder despite the fact that the defense was never placed on notice of the government's intent to offer such expert evidence.
   IV. The combination of the Military Judge's errors in allowing Dr. Borrego to testify that the alleged victim identified appellant by name, described the characteristics of appellant's genitalia, and in allowing Dr. Borrego to testify that she diagnosed the alleged victim with post traumatic stress disorder, materially prejudice appellant's right to a fair trial.

2. The child was later re-examined by a forensic pediatrician, Dr. Barbara Craig, who found no evidence of a torn hymen. The prosecution did not present expert testimony about the first exam, but presented Dr. Craig's stipulated testimony that it is not uncommon for there to be no visible injury to children subjected to sexual trauma. They are flexible and heal quickly. Since Dr. Craig's finding was inconclusive, she could neither confirm nor exclude the type of trauma described by the child. Record at 349. The defense nevertheless elicited information about the first exam from various witnesses as evidence of an unfounded predisposition by the parents and Dr. Borrego to interpret events and act consistently with that predisposition. *See, e.g.,* Record at 380.

referral of the County Crisis Support Services, N's parents took her to Dr. Borrego, a licensed family therapist. During treatment by Dr. Borrego beginning 15 March 2005, and continuing over the course of more than a year, N made several incriminating statements about the appellant. Five of these statements were admitted into evidence despite the defense's hearsay objections.[3] Also, over a defense objection that the Government had not provided proper notice, Dr. Borrego testified that her diagnosis of N was post-traumatic stress disorder (PTSD). The admissibility of Dr. Borrego's diagnosis and N's various hearsay statements are the subject of appellant's assigned errors.

### The Medical Exception to the Hearsay Rule

*Standard of Review*

A military judge's decision to admit evidence is reviewed for abuse of discretion. *United States v. Hollis,* 57 M.J. 74, 79 (C.A.A.F.2002) (citation omitted). We review the military judge's findings of fact under the clearly erroneous standard and his conclusions of law, *de novo. Id.* We should only reverse if the findings of fact are clearly erroneous or if the military judge's decision is influenced by an erroneous view of the law. *Id.*

Our superior court recently articulated the foundation that must be established in order to qualify a hearsay statement for admission under the exception provided in MILITARY RULE OF EVIDENCE 803(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.):

Statements which are offered as exceptions to hearsay under MIL. R. EVID. 803(4) must satisfy two conditions: first the statements must be made for the purposes of "medical diagnosis or treatment"; and second, the patient must make the statement "with some expectation of receiving medical ben-

efit for the medical diagnosis or treatment that is being sought."

*United States v. Rodriguez–Rivera,* 63 M.J. 372, 381 (C.A.A.F.2006) (citations omitted).

*Findings of Fact*

Before beginning our analysis of the military judge's decision, we note that when factual issues are involved in determining a motion, military judges are to state essential findings on the record. RULE FOR COURTS-MARTIAL 905(d), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.); *see United States v. Postle,* 20 M.J. 632, 636 (N.M.C.M.R.1985). In this case, the military judge specifically found that the evidence established N, "in fact, had the requisite intent or understanding of why she was seeing Dr. Borrego." Record at 117. While this single finding is an essential fact pertaining to the second condition required to admit the contested evidence, that fact alone is inadequate to resolve the whole of the issue presented. Ordinarily, such an inadequacy would require a rehearing or return of the record to the military judge for entry of complete essential findings. *United States v. Doucet,* 43 M.J. 656, 659 (N.M.Ct.Crim.App. 1995). However, under the authority of Article 66(c), UCMJ, we have our own fact-finding authority and we choose to exercise it here. *Id.*

Based on our review of the record of trial, we find the following facts:

1. Dr. Borrego holds a Ph.D. in psychology and is a licensed family psycho-therapist with 28 years of experience. Record at 90–91.

2. After the date of the alleged abuse, N exhibited certain uncharacteristic behavior, including becoming moody, aggressive, emotionally reactive, and fearful. Her grades fell and she had nightmares. Record at 92, 107, 111, 254–79, and 291–317.

---

3. The specific statements of N, as testified to by Dr. Borrego, include:
   1. "Temo put his wee wee in her tuddy." Record at 372.
   2. "Temo hurt her right here, pointing to her vaginal area." Record at 373.
   3. "Temo hurt her with his wee wee and that its bigger than her brother's, [T], and its brown." Record at 373.

4. "Temo put his wee wee in her wee wee, pushed it, pointing to her vaginal area, and on my butt and then it was on the bed and it hurt." Record at 377.
5. "he (Temo) hurt her and she pointed to her vaginal area and that he hurt her butt, too, and then she made reference to Mr. Salinas' private area as looking like a snake." Record at 377.

3. Dr. Borrego told N's parents that, although accepting their daughter as a patient upon referral from the county, her role was to help the child and not to get into the details of an investigation or anything that had to do with whether someone was going to be convicted or not. Record at 97–99.

4. Dr. Borrego began treating N on 15 March 2005, twenty days after N first reported sexual abuse by the appellant, which she said occurred on or about 23 February 2005. Record at 91, 93.

5. Dr. Borrego treated N in a facility in which at least one room was an examination room, one was an office and a third was configured as a play activity room, including toys and therapeutic games that allow children to express themselves. Record at 92, 353–54, 370.

6. Dr. Borrego explained to N that "I'm not a doctor who gives shots ... but I'm the doctor that works with kids." Dr. Borrego told N that the way she could help was by talking and told N to "tell the doctor about your feelings." Record 99–101.

7. N knew her therapist was a doctor and referred to her as "Dr. Borrego." Record 96, 100, 236.

8. N knew she was at Dr. Borrego's office for treatment. Record 93–94, 236.

9. Dr. Borrego employed a treatment regime of therapeutic activities and games with N, encouraging her self-expression. She treated N alone in the activity room of her facility, generally after initially meeting N with one of her parents in the office area. Record 92, 355, 358, 378; Appellate Exhibit XLII.[4]

10. The hearsay statements at issue were made in the initial evaluation and subsequent treatment sessions N attended with Dr. Borrego. Record at 92–94; 352–363.

11. Though Dr. Borrego asked some questions about what happened, N usually raised the appellant's name in the course of therapeutic games. Record at 93–94; 354–58; 373–74; 378.

12. Dr. Borrego relied on N's statements in assessing and treating her. Record 101.

13. Dr. Borrego had a working diagnosis of N as suffering from a post-traumatic stress disorder (PTSD). Record 379.

14. N inadvertently saw the appellant on base or at a mall and became scared. Record at 110.

15. Dr. Borrego assessed that seeing the appellant in court would impair N's treatment to the point of being faced with starting over. Record at 111.

16. N realized the anticipated benefit from talking to Dr. Borrego about the appellant. Record at 236.[5]

*Analysis*

■ Turning to an analysis of the law, we first note that the applicability of Mil. R. Evid. 803(4) is not limited to statements made to medically licensed doctors, but may include members of other disciplines. *United States v. Haner*, 49 M.J. 72, 77 (C.A.A.F. 1998). Specifically, psychologists may be the recipients of qualifying hearsay statements in both military and federal criminal courts. *United States v. Donaldson*, 58 M.J. 477, 485 (C.A.A.F.2003)(comparing Fed.R.Evid. 803(4) to military practice) (citations omitted). However, such statements must meet both conditions set forth above, the first of which is that the statement must have been made for the purpose of diagnosis or treatment. *Rodriguez–Rivera*, 63 M.J. at 381.

Even though N was initially referred to Dr. Borrego by the county, Dr. Borrego made her role quite clear. She was not part of a criminal investigation and had no interest in who, if anyone, would be convicted for

---

**4.** Though not introduced into evidence, Dr. Borrego's progress notes were submitted as AE XLII. The notes indicate "Treatment: self-expression via play activities and interactive games."

**5.** Q: Did you see a doctor?
A: Dr. Borrego.
Q: And who was Dr. Borrego?
A: [No response.]

Q: What does Dr. Borrego do?
A: She helps me.
Q: Can you speak a little into the microphone, N[...]. What does Dr. Borrego do?
A: She helps me.
Q: How does she help you, N [...]?
A: Telling her about Temo.

assaulting the child. Her assessment and treatment of N was for the sole purpose of rendering mental health care to N, who was exhibiting emotional distress, manifest in various concerning behavior. From the standpoint of Dr. Borrego, the statements made by N were initially elicited for the purpose of a mental health assessment and to design a treatment regime. Later statements were either elicited or uttered spontaneously in the course of treatment sessions. Those statements related to "the cause or external source" of N's persistent symptoms—her nightmares and other behavior of concern. MIL. R. EVID. 803(4), Discussion. In her testimony, Dr. Borrego agreed that N's statements about the appellant were "reasonably pertinent to diagnosis or treatment."

It is true that under some circumstances, the specific identity of an assailant might be immaterial to psychological diagnosis and treatment of trauma resulting from a sexual assault. However, where, as here, a member of the household is the alleged offender, the situation is different. *See United States v. Dean*, 31 M.J. 196, 203 (C.M.A.1990); *United States v. Deland*, 22 M.J. 70, 74 (C.M.A. 1986). While Dr. Borrego's testimony could have been directed more precisely to address this aspect of N's treatment, the testimony that was elicited is a sufficient basis upon which to conclude that Dr. Borrego needed to know the information about which she inquired in order to properly structure N's treatment and to ensure that N's treatment was not compromised by additional encounters with the perpetrator. We, therefore, conclude that Dr. Borrego was engaged in legitimate mental health evaluation and treatment of N at the time the child made the hearsay statements at issue and that N's statements were pertinent to Dr. Borrego's diagnosis and treatment of her. This factual context satisfies the first condition for admission of hearsay under MIL. R. EVID. 803(4). *Rodriguez–Rivera*, 63 M.J. at 381.

Regarding the second condition for admission, the subjective state of N's mind, we acknowledge that "very young children will not have the same understanding or incentive as adults when making statements to persons providing health care." *United States v. Avila*, 27 M.J. 62, 66 (C.M.A.1988). Nevertheless, a child must "at least [know] that the person is rendering care and needs the information in order to help." *Id.* In the case of *United States v. Kelley*, 45 M.J. 275 (C.A.A.F.1996), a counselor introduced himself to his six-year-old patient as a "talking doctor." *Id.* at 277. The court held that the record supported the military judge's preliminary findings of fact that the child understood her counselor was trying to help her deal with unpleasant thoughts and feelings, and that "she needed to tell him what she was thinking and feeling." *Id.* at 280.

The facts in *Kelley* compare favorably with those at issue in this case. N knew Dr. Borrego was a "doctor who works with feelings" and knew she was supposed to "tell the doctor about your feelings." She referred to her therapist as "Doctor Borrego" and she knew that Dr. Borrego's role was to help her. These facts were contained in the testimony of Dr. Borrego and of N, who specifically said she was seeing a doctor and that she received the expected "helpful" benefit from talking to Dr. Borrego about the appellant. We conclude, therefore, that N's understanding of Dr. Borrego's role, of her own treatment, and of the connection of these to resolving her nightmares and other symptoms is direct enough to fulfill the purpose of MIL. R. EVID. 803(4). That purpose, of course, is to ensure the veracity of the tendered hearsay statements by demonstrating N had an incentive to tell the truth about the matters she perceived as relevant to her treatment. *Deland*, 22 M.J. at 73. Among these was the identity of N's assailant, which she provided in response to specific questions by her therapist and which she spontaneously voiced during therapeutic games.

Notwithstanding the analysis thus far, the appellant urges that the five foundational facts of *United States v. Quigley*, 35 M.J. 345, 347 (C.M.A.1992) should control. More specifically, the appellant argues that N's statements fail to fulfill the temporal factor of *Quigley* and should have been excluded.[6] We disagree.

---

**6.** The continued viability of *Quigley* appears somewhat unsettled in view of our superior court

In addressing the two conditions set forth in *Rodriguez–Rivera,* we have already addressed four of the five *Quigley* factors: the statements at issue were made at various times during diagnosis and treatment sessions; they were made to Dr. Borrego, an individual who could render a diagnosis and treatment; the statements were made by N, an individual who had an expectation of receiving treatment from the recipient of the statement; and the statements referred to the existence of, and the cause of, N's feelings, which were the focus of treatment. The only foundational fact yet to be addressed under *Quigley* is the temporal factor; that is, that the statements were made "near the pivotal time of events." *Quigley,* 35 M.J. at 347.

In *Quigley,* the victim told her father about sexual abuse by the accused two weeks after it occurred. Shortly thereafter, she was referred to a psychologist to whom she made the hearsay statements ultimately admitted at trial. *Id.* By comparison, in *United States v. Dean,* 31 M.J. 196 (C.M.A.1990), a case preceding *Quigley,* the court permitted admission of statements made by a six-year-old child to a treating psychologist two years after the suspected sexual abuse occurred. Similarly, the child in *Rodriguez–Rivera* had been seen by her counselor four times a month over the course of the seven months preceding trial. 63 M.J. at 381. Though not explicitly addressing the temporal aspect of the factual foundation in these cases, our superior court affirmed admission of hearsay statements by all of these children.

In the case at bar, N's initial session with Dr. Borrego was three weeks after the abuse occurred. Thereafter, N made the other four statements over the course of treatment sessions during the year preceding trial. We find admission of these statements is consistent with the temporal facts in *Dean, Quig-*

ley, and *Rodriguez–Rivera.* Admitting the statements is also consistent with the plain language of MIL. R. EVID. 803(4), which provides that hearsay statements are not excluded when they describe "present symptoms" or "the external source thereof." While more complete testimony on such a critical foundational matter would certainly have been the better practice, we conclude that the record adequately shows that N's initial statement addressed the cause of her then existing emotional trauma. Her later spontaneous statements about the appellant's abuse were statements expressing her present, persisting bad feelings and the cause thereof. Consistent with Dr. Borrego's testimony, we conclude that all of these statements, including the identity of N's stepfather as her assailant, were pertinent to a proper diagnosis and to the efficacy of N's ongoing treatment. As such, the statements satisfy *Quigley's* temporal requirement.

We hold that the military judge's preliminary finding of fact was not clearly erroneous and, in view of our own findings, we conclude that the military judge's ruling admitting the five hearsay statements was based on a correct understanding of the law as applied to the facts of this case. The assignment of error is without merit.

### Notice of Expert Testimony of Post–Traumatic Stress Disorder (PTSD)

*Standard of Review*

The appellant did not object at trial to Dr. Borrego's PTSD testimony on the basis that the lack of notice left the defense unprepared to proceed, as the appellant now alleges on appeal. As a result, this lack of timely trial objection waived appellate review of this issue on the basis asserted. *United States v. Bledsoe,* 26 M.J. 97, 102 (C.M.A.1988)(be-

---

articulating the foundational requirement for admission of a statement under MIL. R. EVID. 803(4) as composed of the two conditions set forth in *Rodriguez–Rivera.* In that case, the court cited *United States v. Edens,* 31 M.J. 267, 269 (C.M.A. 1990) and quoted *United States v. Deland,* 22 M.J. 70, 75 (C.M.A.1986), without referring to *Quigley,* which had been decided more recently than either of the former two cases. Indeed, the court did not even address the five factors upon

its second review of *Quigley.* *United States v. Quigley,* 40 M.J. 64 (C.M.A.1994). Regardless, any ambiguity in the status of *Quigley* does not affect the case under review here because we believe the military judge's ruling is supported by the record even if considered within the *Quigley* construct of temporal and other foundational facts by which the requisite two conditions are established.

cause the accused objected to evidence only on the basis of relevance and probative value, "any prosecution failure to provide 'timely notice' was waived.").

At trial, the defense did move to exclude PTSD testimony on several other bases.[7] Record at 363. However, the appellant has not asserted any of these as a basis for his present appeal. Where an appellant has not preserved an objection to evidence by making a timely objection, or has not perfected appeal on the basis of a timely objection, that error will be forfeited in the absence of plain error. MIL. R. EVID. 103(d). To demonstrate that relief is warranted under the plain error doctrine, an appellant must show that: (1) there was error; (2) the error was plain or obvious; and (3) the error was materially prejudicial to his substantial rights. The standard of review for determining whether there is plain error is *de novo*. *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F.2007) (citations omitted).

*Analysis*

■ It is clear that the Government did not provide proper notice that Dr. Borrego would testify as an expert on the merits, as required by the military judge. However, the record also shows that the appellant and his defense team had Dr. Borrego's notes on 25 October 2006. Upon hearing pretrial testimony about PTSD during motions on 30 October, the defense requested the opportunity to voir dire Dr. Borrego prior to her testifying on the merits. During that voir dire, trial defense counsel conducted 12 pages of cross-examination, establishing, *inter alia,* that over the course of more than a year, Dr. Borrego had never documented a diagnosis of PTSD in her progress notes. Record at 351–63. Additionally, trial defense counsel litigated the admissibility of expert testimony by Dr. Wendy Dutton and prevailed in having it excluded. Record at 136–42.

Since trial defense counsel never told the military judge they were unprepared to proceed and did not request a continuance, we can hardly conclude that the military judge erred in permitting Dr. Borrego to testify about PTSD on the basis that a lack of notice had rendered trial defense counsel unprepared to defend against the testimony. To the contrary, the military judge granted the defense's request for additional voir dire. Thereafter, the trial defense counsel demonstrated they were both prepared and able to conduct effective cross-examination of Dr. Borrego, as they had previously done with Dr. Dutton and her proffered testimony about the behavior of sexual abuse victims. We conclude the cross-examination of Dr. Borrego before the members was a tactical decision unrelated to a lack of preparedness.[8] Based on the foregoing, we find no plain error in the lack of notice.

Regarding the other irregularities raised by the manner in which the PTSD testimony was admitted, we first note that before expert testimony may be admitted, the following factors must be established by the proponent of such testimony: (A) the qualifications of the expert, MIL. R. EVID. 702; (B) the subject matter of the expert testimony, MIL. R. EVID. 702; (C) the basis for the expert testimony, MIL. R. EVID. 703; (D) the legal relevance of the evidence, MIL. R. EVID. 401 and 402; (E) the reliability of the evidence, MIL. R. EVID. 401; and (F) whether the probative value of the testimony outweighs other considerations, MIL. R. EVID. 403. *United States v. Traum*, 60 M.J. 226, 233–34 (C.A.A.F.2004).

■ Dr. Borrego was neither tendered nor accepted as an expert witness for purposes of testimony on the merits. *United States v. Foster*, 64 M.J. 331, 338 (C.A.A.F.2007)(members entitled to be informed of expert desig-

---

7. The trial defense counsel articulated the following bases for objecting to the admission of any reference to PTSD by Dr. Borrego: 1) Dr. Borrego was not called as an expert, but as a lay witness; 2) her testimony was prejudicial; 3) the testimony was an improper reference on the credibility of N; 4) confusion of members; 5) and a lack of foundation because Dr. Borrego

was not licensed as a psychologist. Record at 363–64.

8. We expressly reject the conjecture that trial defense counsel was in some way intimidated from requesting delay on the eve of trial. Appellant's Reply Brief at 7. The record does not support such speculation.

nation).[9] Additionally, there was insufficient foundation elicited regarding Dr. Borrego's qualifications and the scientific methodology of how she arrived at the diagnosis she tendered to the court.[10] Similarly, the basis of her conclusion and the relevance of PTSD in this case were not clearly established. Prior to admitting the PTSD testimony, the military judge did not conduct a balancing of the probative value of the testimony and the possible unfair prejudice. Likewise, he did not instruct the members that Dr. Borrego's testimony was expert testimony. *See* Military Judges' Benchbook, Dep't of the Army Pamphlet 27–9 at 860 (15 Sep 2002). We, therefore, conclude that Dr. Borrego's reference to PTSD was not properly admitted as expert testimony.

Based on our finding of error, we test the impact of Dr. Borrego's PTSD testimony for prejudice; that is, whether the finding of guilt was substantially swayed by the error in admitting it. We evaluate prejudice "by weighing (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F.1999) (citations omitted). Applying this four-prong test, we are convinced that the error in this case was harmless beyond a reasonable doubt.

■ First, the Government's case against the appellant was a strong one. The victim made a fresh complaint to her father within 48 hours of the incident. Later at trial, N took the stand and testified in age-appropriate terms that she had been raped and sodomized by the appellant. Specifically, she described how the appellant took her up-

stairs on his shoulder, and had her undress while he went to the bathroom and applied a "lotion thingie"—an accurate yet unknowing description of the appellant's use of a lubricated condom. She then testified that the appellant put his "wee wee" in her "tuddy" and "butt," and that this hurt her. She confirmed the meaning of her child-terminology on anatomical drawings by circling which body parts were involved. Under cross-examination, N testified that no one told her what to say, other than she had been told to tell the truth. Additionally, the child's hearsay statements to Dr. Borrego, admitted under MIL. R. EVID. 803(4), included age-appropriate descriptions of the appellant's genitalia as "like a snake," "brown" and "bigger than my brother's, [T]'s."

On the defense side, there was no conclusive forensic evidence. The appellant used this deficiency to support his theory that the child's testimony was the result of, at best, well-meaning adults who were predisposed to believing the abuse occurred and who inadvertently "reinforced" the child's perception of having been abused, when nothing of the sort had occurred. In our review of the record, the defense was unsuccessful in gaining significant concessions consistent with this approach, which ultimately appeared to be more implication than fact. As additional support of his defense, the appellant presented evidence that he was a petty officer with a good work record. The appellant then testified under oath, denying that he abused the child, and subjecting himself to cross-examination. In so doing, however, the appellant explained, in response to a member's question, that N was able to describe his genitals

---

9. Dr. Borrego was qualified as an expert in child psychology during a pre-trial motion about use of a protective screen to shield N from the appellant during trial. Such a limited qualification, however, is generally not sufficient for purposes of later testimony on the merits, as it degrades the foundation necessary for the members' intelligent consideration of the expert testimony. The proper procedure for qualifying an expert witness on the merits (or "prequalifying" an expert and instructing the members) is well established and need not be repeated here. Bench and bar are simply reminded to follow proper trial technique in order to ensure a fair trial and to eliminate needless appellate litigation.

10. Some of that foundation was provided in response to questions by the military judge. We also take this opportunity to remind counsel and military judges that the burden of establishing a proper foundation for expert testimony is on the proponent. The military judge must take care to remain impartial as he executes his important gate-keeping role whenever expert testimony is at issue. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *See also United States v. Foster*, 64 M.J. 331 (C.A.A.F.2007).

in such detail because she had seen him naked when she was three years old, during a "car wash" process that he and his wife used to bathe the children when they were younger. Record at 467–68. Given the very tender age of three, it is a lot to ask that the members accept that this incident, innocently engaged, was the source of the descriptions by N to her therapist two to three years later.

It is in this factual context that we evaluate Dr. Borrego's testimony about her diagnosis of N. We find that the materiality of her testimony was minimal and the quality of the information she provided was of limited value. As already noted, Dr. Borrego was not tendered to the court as an expert witness during trial on the merits.[11] Rather, she was presented as a percipient fact witness, principally for the purpose of relating the victim's hearsay statements. The "fact" that N may have been suffering from PTSD, or any other condition, without an expert description of the condition and its relevance, is not probative of anything more than the facts as testified to by N's parents: they sought treatment from a psycho-therapist for symptoms, which they observed, of N's apparent emotional trauma. Most importantly, Dr. Borrego's offer of the "PTSD" diagnosis was a qualified one: "When I'm working with children, I'm always—I have a working diagnosis, and then even for the purposes of insurances, we have to offer a diagnosis." Record at 379. Only after setting out these qualifying factors did she indicate, without elaboration, that her diagnosis was "Post-traumatic stress disorder." *Id.* Under these facts, we do not find Dr. Borrego's testimony raises an issue of unfair comment on N's credibility. *See United States v. Brooks,* 64 M.J. 325 (C.A.A.F.2007). The plain meaning of Dr. Borrego's testimony was that she was considering PTSD as a diagnosis while she continued to evaluate and treat N, but that she had not yet concluded anything to a medical certainty. We find that this testimony lies more in favor of the appellant than against him; but, in either event, it is neither conclusive nor even very informative, as limited as it was.

Finally, the military judge did not instruct the members that Dr. Borrego's working diagnosis, developed in part for "the purposes of insurance," was a matter of expert testimony as he did with the stipulation of Dr. Barbara Craig's testimony. This omission deprived Dr. Borrego's working diagnosis of any endorsement by the military judge that it was worthy of consideration as expert testimony. Weighing all of these factors, we conclude beyond a reasonable doubt that the appellant suffered no material prejudice from Dr. Borrego's single, qualified reference to PTSD.

Finally, having found all of the foregoing assertions of error to be without merit, we hold that they are insufficient to support the appellant's fourth assigned error based on the doctrine of cumulative error. *United States v. Gray,* 51 M.J. 1, 61 (C.A.A.F.1999).

### Conclusion

Accordingly, we affirm the findings of guilty and the sentence, as approved by the convening authority.

Senior Judge FELTHAM and Judge MITCHELL concur.

---

11. The appellant does not contest that Dr. Borrego was *actually* qualified by virtue of her education, training and experience to give her expert opinion. See Appellant's Brief of 11 Jun 07 at

20. Indeed, as previously noted, she was recognized, without objection, as an expert in child psychology during pretrial motions. Record at 105–06.