# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 39019 (reh)

————————————

**UNITED STATES**
*Appellee*

**v.**

**Luis F. SANTOS JR.**
Airman First Class (E-3), U.S. Air Force, *Appellant*[1]

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 November 2019

————————————

*Military Judge:* Mark W. Milam.

*Approved sentence:* Dishonorable discharge, confinement for 12 months, forfeiture of $500.00 pay per month for 12 months, and reduction to E-1. Sentence adjudged 26 January 2018 by GCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Major Mark C. Bruegger, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Judge POSCH delivered the opinion of the court, in which Senior Judge J. JOHNSON and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

[1] This court's 23 August 2017 decision misidentified Appellant as a senior airman and omitted the suffix "Jr."

_____

POSCH, Judge:

In October 2015, Appellant was convicted at a general court-martial composed of a military judge alone of one specification of sexual assault of Airman First Class (A1C) SM[2] and one specification of abusive sexual contact of A1C EM, both in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[3] The military judge sentenced Appellant to a dishonorable discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority disapproved the adjudged forfeitures, deferred and waived the automatic forfeitures for the benefit of Appellant's dependents, but otherwise approved the adjudged sentence.

In his initial appeal, Appellant assigned two errors. First, in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016) and *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017), Appellant asserted that the military judge erred by admitting evidence of each charged offense to be used as propensity evidence under Military Rule of Evidence (Mil. R. Evid.) 413 to prove the other charged offense. Second, Appellant claimed the evidence was factually and legally insufficient to sustain his conviction for abusive sexual contact of A1C EM. Appellant did not then raise on appeal a claim that his conviction for sexual assault of A1C SM was legally and factually insufficient.

A three-judge panel of this court affirmed the findings of sexual assault of A1C SM, and pursuant to *Hills*, 75 M.J. at 350, and *Hukill*, 76 M.J. at 219, set aside the finding of guilt of abusive sexual contact of A1C EM along with the sentence. In the exercise of this court's authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), the panel authorized a rehearing as to the set-aside finding and sentence, and returned the record of trial to The Judge Advocate General for remand to the convening authority for further action consistent with our opinion. *United States v. Santos*, No. ACM 39019, 2017 CCA LEXIS 575 (A.F. Ct. Crim. App. 23 Aug. 2017) (unpub. op.).

On 16 November 2017, the General Court-Martial Convening Authority ordered a rehearing and subsequently withdrew and dismissed the specification

---

[2] A1C SM separated from active duty before the rehearing and is identified in the opinion by her military status at the time of Appellant's original trial.

[3] The offenses of which Appellant was found guilty are listed in the *Manual for Courts-Martial, United States* (2012 ed.). All other references in this opinion to the Uniform Code of Military Justice (UCMJ) and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.), unless otherwise indicated.

alleging abusive sexual contact of A1C EM.[4] A rehearing was held on 26 January 2018 at Joint Base San Antonio (JBSA)-Lackland, Texas, to adjudge a sentence for the affirmed finding of sexual assault of A1C SM. A general court-martial composed of a military judge sentenced Appellant to a dishonorable discharge, confinement for 12 months, forfeiture of $500.00 pay per month for 12 months, and reduction to the grade of E-1. The convening authority approved the sentence that was adjudged at the rehearing.

In this appeal, Appellant identifies two assignments of error: (1) whether the military judge erred by admitting A1C SM's testimony in presentencing from Appellant's October 2015 court-martial under the residual exception to the rule against hearsay, Mil. R. Evid. 807; and (2) whether Appellant's conviction for sexual assault of A1C SM, which a panel of this court previously affirmed, *Santos*, unpub. op. at *25, is legally and factually sufficient.[5] We have considered Appellant's second assignment of error and conclude the issue does not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). Finding prejudicial error in the military judge's admission of evidence under the residual hearsay exception, we reassess and affirm the sentence.

## I. BACKGROUND

In October 2015, Appellant was convicted of sexual assault of A1C SM following her testimony at Appellant's court-martial. The trial counsel recalled A1C SM in presentencing to testify further about the effects of Appellant's criminal conduct beyond its immediate impact in the hours after the assault that she described in findings. Unlike her findings testimony, the matters in aggravation presented in presentencing described how Appellant's criminal conduct appreciably affected her during the 11 months between the sexual assault and trial.

A1C SM was not subpoenaed and did not testify at Appellant's sentencing rehearing convened in January 2018. Instead, the trial counsel offered both a written transcript and an audio recording of her in-court testimony during the findings and presentencing phase of Appellant's original trial held almost two years earlier. Without objection, the military judge admitted excerpts from A1C SM's findings testimony, and over defense objection, her presentencing testimony as well.

---

[4] The convening authority withdrew and dismissed Specification 3 of the Charge, which action we find was consistent with the remand and R.C.M. 1107(e)(1)(B)(iii).

[5] Appellant personally asserts the second issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

### 1. Prior Findings Testimony

In the replay of her findings testimony that was admitted without objection, A1C SM explained how she and Appellant became friends at training before they arrived at their first duty assignment at JBSA-Lackland. Before long, Appellant became her best friend among a circle of Airmen who spent most of their off-duty time together. One evening after dinner with their friends, she returned with Appellant to his dormitory room on JBSA-Fort Sam Houston, where she borrowed shorts and a t-shirt. After changing clothes she lay on Appellant's bed and they watched a movie. A1C SM soon fell asleep. She awoke to the sensation of Appellant's fingers inside her vagina and his erect penis pressed against her leg. She felt Appellant kissing her neck and breathing heavily. A1C SM described feeling numb and scared. She elbowed Appellant, ran barefoot to her car, locked the door, and texted another friend, "I just woke up to [Appellant] fingering me, and I'm heading back to Lackland." While driving home, she was "hyperventilating and shaking," "really scared," "stressed out," and "just felt empty," all the while pondering why her best friend would "do that" to her. When she reached her dorm room she took off the clothes Appellant had lent her, threw them in a corner of her room, got in the shower, and sat on the floor holding her knees "for a really long time." She showered for over an hour with the curtain open because she was terrified of Appellant entering the room.

### 2. Prior Presentencing Testimony

Over defense objection, the military judge admitted additional evidence in aggravation in the form of a written transcript and three audio recordings, altogether 13 minutes in length, from portions of A1C SM's presentencing testimony given at the original trial. A1C SM's prior testimony described the psychological effects of Appellant's misconduct and how it affected her career, view of the military, and ability to feel safe in the 11 months after the sexual assault. None of the evidence in aggravation that A1C SM gave in presentencing was admitted during the findings portion of Appellant's trial.

A1C SM described waking up every hour or half-hour in the months before trial as a result of nightmares she experienced from the assault. To cope with sleeplessness, she tried consuming alcohol and taking prescribed sedatives but would still wake up crying and relive the incident "every night over and over again." After reporting the assault, she was removed from patient care duties at the hospital where she worked. She testified her superiors "didn't think [she] was emotionally stable and didn't want [her] to be around patients," a determination she found hard to accept. Her upgrade training was placed on hold, and because she was unable to progress in her Career Development Course she was ineligible for tuition assistance to pay for college. A1C SM tearfully explained she "used to genuinely believe in the wingman concept," but she no

longer trusted anyone including her coworkers and leadership. She no longer felt safe in public or on a military installation and limited her activities to work and staying at home. She was unable to bring herself to reenter JBSA-Fort Sam Houston where the assault occurred. After a change of assignment, A1C SM found a house with a security system and a panic alarm in the bedroom, but intrusive fears of Appellant and others discovering where she lived persisted.

A1C SM also described the effect of Appellant's criminal conduct on her relationships. She felt isolated from anyone who found out what happened. She explained how friends became distant because Airmen who supported Appellant took sides. Her father, a prior military service member, had encouraged her to enlist in the Air Force as "he knew the Air Force would take care of" her. A1C SM told how her father chastised her for reporting the assault, and her mother looked upon her as a helpless victim rather than an adult. By far the most significant consequence was lost intimacy with her husband whom she married two weeks before the assault. She described how his exhibiting affection through physical contact and touch felt like "getting assaulted all over again," and would trigger anxiety attacks.

In the rehearing on sentencing, the trial counsel argued how the "lasting effects" A1C SM described "one year on" turned her into a "person that she didn't used to be."

## II. DISCUSSION

On appeal, Appellant maintains the military judge erred in receiving A1C SM's victim-impact testimony given in presentencing at Appellant's original trial. Conceding that Rule for Courts-Martial (R.C.M.) 810(a)(2)(A) allows the sentencing authority to receive evidence from the original trial that is admitted in findings, Appellant contends that evidence admitted in the trial counsel's presentencing case is inadmissible at a rehearing unless the proponent shows compliance with the Military Rules of Evidence. Appellant claims A1C SM's prior testimony in presentencing was inadmissible hearsay and did not qualify for admission under any permitted exception. Therefore, it should not have been received, much less considered, to adjudge Appellant's sentence.

The Government maintains A1C SM's prior testimony was more probative aggravation evidence than any sentencing testimony she could offer in the 2018 sentence rehearing. The trial counsel argued that A1C SM's presentencing testimony was not hearsay, claiming the rehearing was simply an extension of Appellant's first trial. Reasoning that hearsay means a statement that "the declarant does not make while testifying at the current trial or hearing," Mil. R. Evid. 801(c)(1), the trial counsel asserted that A1C SM's presentencing testimony given at the original trial was non-hearsay and therefore admissible

at the rehearing. In the alternative, the Government contends now as it did at trial that her prior testimony qualified for admission under the residual exception to the rule against hearsay, Mil. R. Evid. 807.

## A. Matters Received in Evidence at a Sentencing Rehearing

As this court observed in *United States v. Sill*s, 61 M.J. 771, 773 (A.F. Ct. Crim. App. 2005), *aff'd*, 63 M.J. 262 (C.A.A.F. 2006), the starting point for the admissibility of sentencing evidence in a rehearing convened to resentence an appellant is R.C.M. 810(a)(2):

> *Rehearings on sentence only*. In a rehearing on sentence only, the procedure shall be the same as in an original trial, except that the portion of the procedure which ordinarily occurs after challenges and through and including the findings is omitted, and except as otherwise provided in this rule.

> (A) *Contents of the record*. The contents of the record of the original trial consisting of evidence properly admitted on the merits relating to each offense of which the accused stands convicted but not sentenced may be established by any party whether or not testimony so read is otherwise admissible under Mil. R. Evid. 804(b)(1)[6] and whether or not it was given through an interpreter.

(Footnote inserted).

Subject to specified conditions, the rule permits the sentencing authority to consider prior testimony, i.e. "evidence," found in "the record of the original trial" that "may be established" by its proponent. R.C.M. 810(a)(2)(A). Strictly speaking, the plain language of the rule does not evaluate such evidence for its "admissibility," "use," or "consideration" at a rehearing, although these and like terms may be used interchangeably. *Id.*; *see also* R.C.M. 810(c)(1) (unless the military judge permits, no member may examine matters from the record of a former proceeding until first "received in evidence"). The salient points are that R.C.M. 810(a)(2) articulates the standard for a military judge to use when determining what evidence from the original trial may be considered by the sentencing authority, and the rule most assuredly levies conditions on what may be received in evidence and considered to determine an appropriate sentence as we explain next.

At a rehearing on sentence only, R.C.M. 810(a)(2)(A) allows the sentencing authority to receive "evidence properly admitted *on the merits* relating to each

---

[6] Enumerating an exception to the rule against admitting hearsay when the declarant is unavailable as a witness. Mil. R. Evid. 804(b)(1) (Former Testimony).

offense of which the accused stands convicted but not sentenced" at the original trial. (Emphasis added). In the case at bar, the military judge agreed with Appellant's understanding of "on the merits," concluding that portions of A1C SM's findings testimony from Appellant's original trial could be considered by the sentencing authority at the rehearing; however, because her presentencing testimony was not on the merits, it could not be received unless it first qualified for admission under the Military Rules of Evidence. This included satisfying the rule against hearsay and its exceptions, Mil. R. Evid. 801–807, as a predicate to admissibility.

For evidence that is properly admitted in the original trial and of consequence in a rehearing, R.C.M. 810(a)(2)(A) imposes no other procedural or evidentiary prerequisite aside from the limitation that such evidence was "on the merits." This condition is open to two possible interpretations. Under the first and more likely reading, and the one adopted by the military judge, "on the merits" means findings only. Under an alternative reading, "on the merits" would include evidence presented both in findings and presentencing at the original trial, but not evidence received before arraignment such as to decide an interlocutory question or rule on a pretrial motion.

The text of R.C.M. 810 as a whole lends support to the first interpretation. When a rehearing is ordered to adjudge a sentence only, "the procedures shall be the same as in an original trial." R.C.M. 810(a)(2). It follows that the full requirements of the Military Rules of Evidence, including the general prohibition against hearsay, would apply until the rules may be relaxed by an accused with respect to matters in extenuation or mitigation presented by the defense, R.C.M. 1001(c)(3), and thereafter by the trial counsel in rebuttal and surrebuttal. R.C.M. 1001(d).

Also instructive is use of "on the merits," as it appears elsewhere in R.C.M. 810. We consider its meaning in the context of the rule's direction for conducting a rehearing on sentence together with either retrial of an offense from the original court-martial, or trial on a new charge and specification:

> *Combined rehearings.* When a rehearing on sentence is combined with a trial on the merits of one or more specifications referred to the court-martial, whether or not such specifications are being tried for the first time or reheard, the *trial will proceed first on the merits*, without reference to the offenses being reheard on sentence only. After *findings on the merits* are announced, the members, if any, shall be advised of the offenses on which the rehearing on sentence has been directed.

R.C.M. 810(a)(3) (second and third emphasis added). Here, the language "first on the merits" and "findings on the merits," resolutely establishes "on the merits" is one and the same with "findings" where it appears in the rule, notably R.C.M. 810(a)(2)(A), and is distinct from sentencing. *See also* R.C.M. 1001(e)(1) ("During the presentence proceedings, there shall be much greater latitude than on the merits to receive information by means other than testimony presented through the personal appearance of witnesses."). It follows that R.C.M. 810(a)(2)(A) treats evidence admitted in findings and evidence admitted in presentencing from an original trial differently when the same evidence is offered again at a sentencing rehearing. In the case of the former, evidence that had been properly admitted and is germane to the rehearing may be considered. In the case of the latter, the evidence must be shown to be otherwise admissible anew even though it had been properly admitted at the original trial. In neither case is the rehearing simply an extension of the original trial. To find otherwise would render the rule ineffectual.

We conclude R.C.M. 810(a)(2)(A) allows that evidence admitted in the findings portion of an appellant's original trial may be received by the sentencing authority at a rehearing on sentence. Conversely, matters other than findings evidence have no special treatment under the rule. As a result, we hold that other than evidence admitted in the findings portion of an appellant's original trial relating to an offense of which the accused stands convicted, a proponent of evidence offered at a rehearing on sentence must establish a basis for admissibility under applicable rules of evidence and procedure, regardless whether the evidence was admitted in presentencing in the original trial. *See generally*, R.C.M. 1001–1010. As a consequence of our holding, we agree with the military judge that admissibility of A1C SM's presentencing testimony at the rehearing turned on whether the trial counsel demonstrated proper grounds for admission under the Military Rules of Evidence.

## B. Erroneous Admission of A1C SM's Prior Presentencing Testimony as Residual Hearsay

At the outset, we note that the evidence in question relates to victim impact and was proper aggravation evidence.[7] *See generally* R.C.M. 1001(b)(4). As both parties acknowledge, the central issue in the case is whether A1C SM's prior testimony in presentencing was admissible under the residual hearsay exception, Mil. R. Evid. 807. The military judge recognized this as well and admitted her testimony under the exception after conducting a Mil. R. Evid. 403 balancing test.

---

[7] Her testimony also demonstrated adverse impact on the mission and good order and discipline, which were relevant considerations under R.C.M. 1001(b)(4).

Appellant argues it was an abuse of discretion for the military judge to admit A1C SM's testimony at the rehearing held more than two years later. Appellant bases his argument primarily on *United States v. Czachorowski*, 66 M.J. 432 (C.A.A.F. 2008). In that case the United States Court of Appeals for the Armed Forces (CAAF) held that a trial counsel's bare assertion of a declarant's unavailability, without more, failed to satisfy the Government's burden to prove the requirements of the residual hearsay exception. Appellant argues trial counsel presented no evidence of reasonable efforts to produce A1C SM as a witness at the rehearing. As a result, the military judge erred in admitting the evidence because the trial counsel failed to prove that admission of her prior testimony was necessary as required by Mil. R. Evid. 807. We agree.

**1. Law**

A military judge's ruling admitting evidence under Mil. R. Evid. 807 is reviewed for an abuse of discretion. *Czachorowski*, 66 M.J. at 434 (citation omitted). "Findings of fact are affirmed unless they are clearly erroneous; conclusions of law are reviewed de novo." *Id.* (citing *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007)). A military judge has "considerable discretion" in admitting residual hearsay. *United States v. Kelley*, 45 M.J. 275, 280–81 (C.A.A.F. 1996) (citing *United States v. Pollard*, 38 M.J. 41, 49 (C.M.A. 1993)).

As a prerequisite to admission of a prior statement as residual hearsay, the proponent is required to prove, and the military judge must determine, that:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
>
> (2) the statement is offered as evidence of a material fact;
>
> (3) the statement is more probative on the point for which it is offered than other evidence that the proponent can obtain through reasonable efforts; and
>
> (4) the general purposes of the Military Rules of Evidence and the interests of justice will best be served by admission of the statement into evidence.

Mil. R. Evid. 807(a).[8] "The residual hearsay rule sets out three requirements for admissibility: (1) materiality, (2) necessity, and (3) reliability." *Kelley*, 45 M.J. at 280 (citations omitted) (discussing a prior version of the rule). The necessity prong, i.e. third prong of Mil. R. Evid. 807(a), "requires the proponent of the evidence to show he could not obtain more probative evidence despite

---

[8] Additionally, Mil. R. Evid. 807(b) requires proper notice to be given. Appellant did not challenge the trial counsel's compliance with this requirement at trial or on appeal.

reasonable efforts." *Czachorowski*, 66 M.J. at 435. The necessity prong "essentially creates a 'best evidence' requirement." *Kelley*, 45 M.J. at 281 (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 644 (9th Cir. 1991)).

### 2. Analysis

The Defense objected to admission of A1C SM's prior testimony at the rehearing on the basis of hearsay, and argued there was no evidence she had been served a subpoena to appear. The military judge addressed each of the Mil. R. Evid. 807(a) prongs. He found A1C SM's prior testimony given in presentencing had equivalent circumstantial guarantees of trustworthiness under the first prong because A1C SM gave her 2015 presentencing testimony under oath and subject to cross-examination. Her prior testimony was evidence of a material fact under the second prong because it was proper aggravation evidence under R.C.M. 1001(b)(4), specifically evidence of victim impact in the 11 months after Appellant's sexual assault. Under the fourth prong, the military judge found that admission best served the purposes of the evidentiary rules and the interests of justice.

The focus of the litigation at trial and this appeal is the third prong, that is, the "necessity" requirement of the rule. To demonstrate necessity the trial counsel must show it could not obtain more probative evidence despite "reasonable efforts." *Czachorowski*, 66 M.J. at 435–36. Our superior court has observed that "courts have found the residual hearsay exception inapplicable when the evidence is not unreasonably difficult to obtain directly from an available declarant." *Id.* at 436. (citations omitted).

We find the military judge did not adequately determine the evidence was more probative on the point for which it was offered than other evidence which the Government could procure through reasonable efforts. In response to questioning by the military judge, the trial counsel stated, without evidence of record, that A1C SM had been made aware of the date, time, and location of the rehearing, that she had been invited to attend, and that she had decided not to appear or provide an unsworn statement. The trial counsel also explained A1C SM was enrolled in school, no longer on active duty, and not represented by counsel. The trial counsel presented no evidence that it subpoenaed A1C SM or other evidence to support its assertions regarding A1C SM's unavailability or status.[9] The military judge was presented no evidence to assess for

---

[9] Referring to the Prosecution's proffer, the trial defense counsel explained he believed, "[t]hey simply called her, and she decided that she didn't want to come." Although the Defense did not "object" to the proffer, they did not explicitly agree with it either, and maintained there was no evidence A1C SM was served a subpoena to appear.

himself whether A1C SM was unavailable or otherwise beyond the Government's ability to procure through reasonable efforts. And, consistent with the lack of evidence on this point, the military judge did not find that the Government made reasonable efforts to produce A1C SM. To that end, he concluded the trial counsel "could have subpoenaed her and required her to attend."[10] Because "[i]t does not appear that that was done," the military judge concluded that none of the exceptions that might allow admission of hearsay when a declarant is unavailable as a witness—including the former testimony exception—would apply.[11] *See* Mil. R. Evid. 804.

Nevertheless, the military judge concluded that the trial counsel satisfied the necessity prong—which he allowed "might be the most difficult prong for the court"—by relying on the trial counsel's assertion that A1C SM's prior testimony given much closer in time to the charged offense was more probative than her in-person testimony would be at the rehearing:

> [R]ecognizing that this was how she felt 2 years ago, a time much more close in time to that of today, the court finds her aggravation evidence at the time of the original trial to be more probative on the point of her aggravation—of her effects of the incident—than anything she could testify to today and 2 years later—over 2 years later.

However, there was no evidence in the record to support this conclusion, based as it was on the assumption that mere passage of time would cause A1C SM's prior testimony to be more probative than any testimony she could give during the rehearing. Much like the trial counsel's mere assertion of unavailability, there was no evidentiary basis for finding A1C SM's recollection had been diminished by the passage of time, and the determination was again made on the basis of the trial counsel's assertion that it was so. However, the CAAF has clearly stated that under the Mil. R. Evid. 807 necessity prong, a "trial counsel's bare assertion" of a witness' unavailability "without any explanation" is insufficient to admit residual hearsay. *Czachorowski*, 66 M.J. at 437. The CAAF has similarly explained that a military judge "cannot take it for granted that a declarant of any age is unavailable or forgetful, and then admit hearsay testimony under the residual exception instead." *Id.* at 436. Here,

---

[10] The process to compel a witness to appear and testify "shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue," Article 46, UCMJ, 10 U.S.C. § 846, and in the case of a witness not on active duty, a subpoena may be issued by detailed trial counsel after referral. R.C.M. 703(e)(2)(A) and 703(e)(2)(C)(2)(b).

[11] The trial counsel did not offer the prior testimony under an exception to hearsay other than the residual exception, Mil. R. Evid. 807.

there was no evidence in the record that A1C SM was either unavailable or forgetful. Although it is possible A1C SM's memory faded over time, it is also possible she could have vividly recounted all that she experienced in the aftermath of Appellant's offense.

Citing *United States v. Bess*, the Government prevails upon this court to be mindful that an abuse of discretion "requires more than just [a court's] disagreement with the military judge's decision." 75 M.J. 70, 73 (C.A.A.F. 2016) (citing *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015)). Relying on *Bess*, the Government contends that the military judge's "finding was not 'outside the range of choices reasonably arising from the applicable facts and the law,'" *id.*, and therefore did not constitute an abuse of discretion. Because the Government failed to offer evidence of reasonable efforts to obtain A1C SM's presence at trial, or to demonstrate that A1C SM's prior testimony was more probative on the point for which it was offered than her in-person testimony would have been, we disagree. The military judge's findings on the necessity prong were based on assertions of counsel and not evidence. It follows then that the findings on which he based his ruling were clearly erroneous. We find the military judge erred in his application of the third prong of Mil. R. Evid. 807, and his ruling to admit residual hearsay was an abuse of discretion.

## C. Prejudice and Sentence Reassessment

Having determined there was error in admission of evidence in aggravation, we must next determine whether the error had a "substantial influence on the sentence" that was adjudged. *See United States v. Boyd*, 55 M.J. 217, 221 (C.A.A.F. 2001) (citation omitted). "If so, then the result is material prejudice to Appellant's substantial rights." *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005) (citation omitted) (setting out the test for the erroneous admission or exclusion of evidence)*; see also United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009); *United States v. Bridges*, 66 M.J. 246, 249 (C.A.A.F. 2008). We test for prejudice by assessing "whether the error substantially influenced the adjudged sentence" and consider four factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (citations omitted). "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *Id.* (citing *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007)).

On appeal, the Government argues Appellant was not prejudiced because admission of A1C SM's prior sentencing testimony at the rehearing did not substantially influence the adjudged sentence. Through the proper admission of A1C SM's findings testimony, the Government claims, the military judge

already had "powerful findings testimony that provided significant aggravation and victim impact evidence."

However, we decline to infer that the military judge admitted other material victim impact evidence and then proceeded to disregard it on grounds that there was already evidence in aggravation of record. This is especially so because unlike evidence that was already before the court, the improperly admitted presentencing evidence went far beyond the immediate aftermath of the sexual assault in the first hours after it happened. The focus of the inadmissible evidence was the long-term consequences of Appellant's conduct measured in months, not hours. It related to just about every facet of A1C SM's life from her military career to her family and friends, including her relationship with her husband. Considering the four *Barker* factors together, we conclude the improperly admitted evidence substantially influenced the sentence.

The result we reach is warranted by how the disputed evidence was used after it was erroneously admitted. The trial counsel argued at the rehearing how such "lasting effects" "one year on" turned A1C SM into a "person that she didn't used to be." The least dated evidence of "lasting effects" would have been offered through A1C SM's live testimony: neither R.C.M. 810 nor R.C.M. 1001(b)(4) establish a temporal limit on evidence that may be admitted at a rehearing on sentence. *See also United States v. Rivers*, 27 C.M.R. 949, 951 (A.F.B.R. 1958) (matters in aggravation up to the time of sentence may be considered at a sentence rehearing); *United States v. Davis*, 65 M.J. 749, 751–53 (N.M. Ct. Crim. App. 2007) (excluding facts from consideration by the sentencing authority at a rehearing because they arose after the date of the original sentence would be "difficult, and ultimately capricious, to implement"). The sustained impact argument trial counsel advanced at the rehearing undercuts the Government's contention that A1C SM's prior testimony given 11 months after the charged offense was more probative than her in-person testimony would have been at the rehearing. The Government cannot have it both ways, arguing the diminished value of victim impact evidence in the 39 months after a sexual assault, and at the same time use victim-impact testimony to argue matters in aggravation because a victim endured "lasting effects."

We next consider whether this court should again order a rehearing or reassess the sentence. We have "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 13 (C.A.A.F. 2013) (citation omitted). The CAAF has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). Thus, our analysis is based on a totality of the circumstances to include whether the offense is of the type that we as appellate judges should have the

experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16. We find the factors weigh in favor of reassessment rather than rehearing.

We are also aware that, in reassessing a sentence, we must ensure that "the reassessed sentence 'is no greater than that which would have been imposed if the prejudicial error had not been committed.'" *United States v. Moffeit*, 63 M.J. 40, 42 (C.A.A.F. 2006) (quoting *Sales*, 22 M.J. at 308). Appellant chose sentencing by a military judge alone, and this court has the experience and familiarity with Appellant's offense to determine reliably what sentence would have been imposed by the judge absent the error. We can reliably determine Appellant would have received a sentence of at least a dishonorable discharge, confinement for ten months, forfeiture of $500.00 pay per month for ten months, and reduction to the grade of E-1.

We also conclude that this reassessed sentence is appropriate. We assess sentence appropriateness by considering Appellant, the nature and seriousness of the offense, Appellant's record of service, and all matters contained in the record of trial. *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006) (citing *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A 1988); *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007). We are convinced that the reassessed sentence is not inappropriately severe.

### III. CONCLUSION

This court previously affirmed the findings of guilty. We reassess the sentence to a dishonorable discharge, confinement for ten months, forfeiture of $500.00 pay per month for ten months, and reduction to the grade of E-1. The sentence as reassessed is correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the sentence as reassessed is **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court